charged with full costs, but that the plaintiff should recover the costs known as "trial fee and disbursements." The plaintiff is entitled to judgment, with such limited amount of costs.

---

### COUDERT et al. v. DE LOGEROT et al.

(Supreme Court, General Term, First Department. April 13, 1894.)

1. MORTGAGES—FORECLOSURE—INADEQUACY OF PRICE.
   A foreclosure sale will not set aside merely because the property, which was worth $450,000, was sold for $437,000.

2. SAME—SALE EN MASSE.
   Mortgaged property, consisting of a parcel of land with an hotel on it, for the purposes of which all the land is required, should be sold as one parcel, though at a prior time it had been split up into parcels, each having a separate building thereon.

Appeal from special term, New York county.

Action by Frederick R. Coudert and Charles Coudert, as surviving trustees, against Blanche H. De Logerot, Timothy Sullivan, and others, to foreclose a mortgage on land. From an order denying a motion to set aside the foreclosure sale, defendant Sullivan appeals.

The opinion of Mr. Justice INGRAHAM at special term is as follows:

The motion to set aside the sale under a judgment of foreclosure in this case is made by one of the defendants in the action, who was a party to the action, who had notice of the sale, who did not attend the sale with any purpose of bidding or protecting his lien, and is supported by defendants occupying the same position. The plaintiffs, who were the owners of the mortgage foreclosed, do not appear on the motion, and make no opposition to the order asked for. The plaintiffs in the action were not the purchasers, the property having sold for sufficient to pay their mortgage in full. The purchasers at the sale have appeared on this motion, and strenuously opposed the granting of the application. There was no intimation that there was any connection between the plaintiffs and the purchasers, or that Mr. Coudert, when he expressed his opinion as to the price at which the property was sold for at the sale, was authorized to bind the purchaser. Mr. Coudert and his firm occupy the position, as far as appears, as attorneys for the mortgagees and mortgagors. A gentleman connected with his office was the assignor of the mortgagors under a general assignment, and when the offers made for the property were refused, and Mr. Coudert made the statements as to his opinion of its value, it would appear that he was acting more for the mortgagors or their assignee than for the plaintiffs. But it cannot be said that any statement of Mr. Coudert did have any material influence upon any purchaser at the auction sale, or prevented any one from attending at that sale and bidding on the property; and, while it might be that, if the property was bought in by either the mortgagors or the mortgagees, the statement made by Mr. Coudert should be considered in determining whether a sale to either of his clients should be upheld, I do not think these purchasers should be bound by that statement, or a valuable bargain taken away from them because of such statement, or because of his refusal to accept an offer for the property on behalf of the mortgagors, which subsequent events have shown would have been of advantage to the mortgagors' creditors.

The application to set aside the sale is based upon four grounds: (1) Gross inadequacy of price; (2) surprise and mistake caused by innocent acts on the part of the attorneys for the mortgagor and the mortgagee; (3) successful fraud on the part of the purchasers; (4) failure to sell in separate

parcels or lots, as required by law.  Leaving out the third ground, it seems to me that neither of the other grounds is sufficient to authorize the court to order a resale.

As to the inadequacy of price, in the first place I do not think that inadequacy sufficient to justify me in setting aside, considering all the circumstances, is shown.  The property sold for $437,000.  The defendant, the moving party, has produced a bidder who says he is willing to bid now for the property $450,000, and there are other affidavits submitted whereby persons swear, in their opinion, that the property is worth from $500,000 to $550,000.  These affidavits are met by others, produced on the part of the purchaser, which leaves the question of the value of the property in doubt.  Assuming, however, that the property would sell for $450,000, which is all I would be justified in assuming from the affidavits before me, and considering the fact that the sale was largely advertised, and had caused much notoriety, and that a large number of persons attended, and that, notwithstanding the very favorable terms upon which the property was sold, but one bid above the amount due to the plaintiff was made, I can see no reason why I should assume that any one is now prepared to bid more than the $450,000 mentioned in the moving affidavit.  And, assuming that the property would now sell at that price, there is but an increase of little over three per cent. of the amount that the property actually sold for, and such an increase in price would never justify the court in setting aside the sale.  If bidders at judicial sales are given to understand that if they make a good bargain the same is to be set aside, while if they make a bad bargain they are to be held, as these purchasers would have been held if it turned out their bid was in excess of the value of the property, legal sales would become a farce, and, instead of encouraging persons wishing to purchase real estate at such sales, it would have the effect of preventing any property from being sold under the judgment of the courts.  In none of the cases cited by counsel for the moving party have the courts taken away from the bona fide purchaser, who had purchased the property at a fair auction sale which had been fully advertised, simply because a bidder was subsequently produced who would give a slightly larger price for it.  In all of the cases some other element has been presented, tending to show that the ward of the court, or some one the court was bound to protect, would be injured, or some other special fact was shown that would make it inequitable to allow the sale to be completed.  So in regard to the alleged surprise and mistake occasioned by the expression of the opinion of Mr. Coudert, and his refusal to sell on behalf of the mortgagors at the prices named.  There are but few mortgagors who do not believe that their property is worth a sum largely in excess of the mortgage upon it, and it certainly would be a remarkable conclusion to say that because the mortgagor refuses a large offer for the property, and expresses an exaggerated opinion as to its value, a purchaser who purchased at a judicial sale should be denied the right to complete the sale.

I think it also clear that the referee was right in selling the property as a whole.  As it stood, it was one block of land, with one building upon it, adapted to one purpose,—that of an hotel,—and the fact that at a prior time the property had been split up in separate parcels, having upon it separate buildings, did not require the referee to sell it in separate parcels, when, in consequence of the improvement on the property, and the use to which it had been put,—there was one hotel upon it,—to be successfully used as an hotel required that the property should be sold as a whole.

To come down now to the third ground upon which the moving party seeks to set aside the sale, viz. that of fraud:  As before stated, no one objects to this application except the purchaser, and the only question is whether there should be taken from the purchaser the right to complete his purchase.  The moving party presents the affidavits of Mr. Semple, the referee, and Mr. Richards, who represented the plaintiffs' attorney, that after the sale one of the purchasers stated that he was about to bid upon the property, but seeing another person, who was the purchaser, bidding, said to him: "I am going to bid on the property.  You had better let me in for a share of the purchase, and we will not bid against each other,"—and that, to prevent

that competition, it was agreed between them that the sale should be on a joint account. No person is produced who heard such a conversation between the two purchasers. There is no evidence to show that Mr. Morganthau, who made that statement, was at that time prepared to make any bid for the property, except his own affidavit, which will be considered in a moment, or that he was financially able to complete the purchase. The whole statement depends upon the understanding of those two gentlemen as to what Mr. Morganthau said, and Mr. Richards stated in court that, at the time that the statement was made, it did not impress him with the fact that anything wrong was done, but rather looked upon the remark as made in a boasting way. In answer to that, we have the affidavit of Mr. Morganthau, who made the statement, and Mr. Flake, to whom the statement was made, and several others who heard the statement that was made. By these affidavits it appears that, after Mr. Flake had commenced to bid, Mr. Morganthau asked him if he would give him an interest in the purchase if one was made, to which Mr. Flake agreed; that nothing was said about Mr. Morganthau bidding upon the property, and there was no agreement expressed or implied that Mr. Morganthau would not bid. And Mr. Morganthau expressly testifies that he was not prepared to bid more than $425,000 for the property, and that he would not have made a bid in excess of that sum, and that, as a greater sum was bid at the time, he would not have made any bids at all, and, as matter of fact, he did not make any bid either before or after the conversation took place. Unless the court is prepared to hold that in every case where two persons who attend a sale, prepared to bid, agree to purchase the property together, such a sale would be set aside, I do not see how I can set aside the sale in this case on the ground stated. There is not the slightest evidence to show that any one would have bid one dollar more for this property, had that agreement not been made, or that the agreement in any way affected the sale. I have examined the cases cited by the counsel for the moving party, but do not think it necessary that I should review them. The principle is quite well settled that while the court has supervision of such sales, and has power to set a sale aside where there is the slightest suspicion of fraud or deception practiced by the purchaser, or any one acting in his behalf, or by whose representations or acts he is bound, but where the purchaser (not a party to the action, and not connected with any of the parties) purchases a piece of property at a sale fully advertised, and made in accordance with the judgment, his right to complete his sale, and get the benefit of the bargain he has made, should not be taken from him, in a case where he is acting in entire good faith, merely because the parties to the action find that they have made a mistake in allowing him to purchase at the price that he did. I think, on the whole case, that I would not be justified in granting this motion, and it must therefore be denied, with $10 costs.

Argued before VAN BRUNT, P. J., and FOLLETT and PARKER, JJ.

A. Stickney, for appellant.
John M. Bowers, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of court below.

---

MILLER et al. v. MILLER et al.

(Supreme Court, General Term, Fifth Department. June 20, 1894.)

WILLS—DESCRIPTION OF BENEFICIARIES—EVIDENCE.
    On an issue whether testator intended to provide for M. or her children, under the description of the "wife and children" of J., his son, it appeared