ERNEST ST. GEORGE LOUGH et al., Appellants, *v.* A. EMILIUS OUTERBRIDGE et al., Respondents.

A defendant in an equity action cannot avail himself of the defense that an adequate remedy at law exists, unless he pleads that defense in his answer, and where the facts alleged are sufficient to entitle plaintiff to relief in some form of action, and no objection has been made by defendant in his answer or on the trial, it is too late to raise the point after judgment or upon appeal.

A common carrier is liable to an action at law for damages in case of refusal to perform its duties to the public for a reasonable compensation.

While a common carrier is bound to convey and deliver goods for a reasonable compensation, and may not, where the circumstances and conditions are the same, unreasonably or unjustly discriminate in favor of one against another, it may make a discount from its reasonable general rates in favor of a particular customer or class of customers in isolated cases for special reasons and upon special conditions. ·

A carrier may by special agreement give reduced rates to customers who stipulate to give it all their business, and refuse those rates to others who are not able or willing to so stipulate, provided that the charge exacted from those others is not excessive or unreasonable.

The Q. S. Co., defendant, was engaged in business as a common carrier transporting freight between N. Y. and certain islands, among them B. Its steamers sailed from N. Y. at intervals of about ten days. Another steamer, which was engaged in the South American trade, and sailed from N. Y. at intervals of about six weeks, took freight for B. Said company's regular rates were fifty cents per dry barrel. It and the other defendants, its agents, offered special reduced rates of twenty-five cents per dry barrel to all merchants and business men in N. Y. who would agree to ship by their line exclusively during the week said outside steamer was there engaged in obtaining freight and taking on cargo. Plaintiffs' firm, which were shipping by that steamer, demanded of defendants that they receive certain barrels of freight and transport the same from N. Y. to B. at the special rate of twenty-five cents. This defendants offered to do if said firm would agree to give their shipments for that week exclusively to their line, and also offered to carry plaintiffs' freight at all times without conditions for forty cents. This offer the firm declined, and plaintiffs refused to receive the freight. The same rates, terms and conditions were offered to all shippers. In an action to compel defendants to receive and transport plaintiffs' freight at the special reduced rates, without conditions, the court found that the rate of forty cents was a reasonable one, and that the reduced rate of twenty-five cents was not profitable. *Held,* that the action was

not maintainable; that plaintiffs were not entitled to any relief either at law or in equity; and so, that the complaint was properly dismissed. *Menacho* v. *Ward* (27 Fed. Rep. 529) distinguished.

Reported below, 68 Hun, 486.

(Argued June 20, 1894; decided October 9, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 14, 1893, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiffs against defendants, the Quebec Steamship Company and its agents, to compel them to grant to plaintiffs terms, facilities and accommodation for transportation of freight by said company's line equal to those granted other shippers.

The facts, so far as material, are stated in the opinion.

*Treadwell Cleveland* for appellants. The defendants as common carriers are bound to treat the plaintiffs and all other shippers upon substantially similar terms for similar service. (*A., T. & S. F. R. R. Co.* v. *D. & N. O. R. R. Co.*, 110 U. S. 674; *U. P. R. R. Co.* v. *Goodridge*, 149 id. 690; *McDuffee* v. *P. & R. R. R. Co.*, 52 N. H. 430; *C. & A. R. R. Co.* v. *People*, 67 Ill. 11; *I., D. & S. R. R. Co.* v. *Ervin*, 118 id. 255; *I. C. R. R. Co.* v. *People*, 121 id. 318; *Sanford* v. *R. R. Co.*, 24 Penn. St. 378; *Audenreid* v. *P. R. R. Co.*, 68 id. 378; *Stewart* v. *L. V. R. R. Co.*, 38 N. J. L. 505; *Atwater* v. *D., L. & W. R. R. Co.*, 48 id. 55; *E. Co.* v. *M. C. R. Co.*, 57 Maine, 188; *Scofield* v. *L. S. & M. S. R. Co.*, 43 Ohio St. 581; *State* v. *C., N. O. & T. R. R. Co.*, 47 id. 130; *Root* v. *L. I. R. R. Co.*, 114 N. Y. 300; *Messenger* v. *P. R. Co.*, 36 N. J. L. 407; *Diphwys* v. *F. R. Co.*, 2 N. & M. 73; *Baxendale* v. *G. N. R. Co.*, 1 id. 200; *Harris* v. *C. N. R. Co.*, Id. 97; *Vedder* v. *Fellows*, 20 N. Y. 126; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 id. 31, 44; *Lynch* v. *M. R. R. Co.*, 90 id. 83.) The court had jurisdiction of this action in equity. (Hilliard on Inj. § 31.)

*Wilhelmus Mynderse* for respondents. The plaintiffs do not present a case entitling them to relief by injunction. (*McDuffee* v. *P. R. R. Co.*, 52 N. Y. 430; *C. & N. W. R. R. Co.* v. *People*, 56 Ill. 365.) A carrier has a right to reduce its usual rates in favor of particular consignors, provided it exacts from no shipper more than a reasonable rate. (Wood's Railway Law, 566, 574; *F. R. R. Co.* v. *Gage*, 12 Gray, 393; *Sargent* v. *B. & L. R. Co.*, 115 Mass. 422; *E. T. Co.* v. *P. R. R. Co.*, 24 La. Ann. 1; *M. S. S. Co.* v. *M. G. & Co.*, L. R. [21 Q. B. Div.] 544; *Evershed* v. *L. & N. W. R. Co.*, 3 id. 135.) Discrimination in rates, if fair and reasonable, is permitted. The interests of the carrier are bound to be regarded, and advantages may be granted by him to individuals where it is made clear that, in entering into such an agreement, the carriers have in view only their own interests, the legitimate increase of their business, and the consideration given to them in return for the advantages. (*Nicholson* v. *G. W. R. R. Co.*, 94 E. C. L. R. 366.)

O'Brien, J. The question presented by this appeal is one of very great importance. It touches commerce and, more especially, the duties and obligations of common carriers to the public at many points. There was no dispute at the trial and there is none now with respect to the facts upon which it arises. In order to present the question clearly a brief statement of these facts becomes necessary. The plaintiffs are the surviving members of a firm that for many years prior to the transaction upon which the action was based, had been engaged in business as commission merchants in the city of New York, transacting their business mainly with the Windward and Leeward Islands. The defendant, the Quebec Steamship Company, is a Canadian corporation, organized and existing under the laws of Canada, and the other defendants are the agents of the corporation in New York, doing business as partners. The business of the corporation is that of a common carrier, transporting passengers and freight for hire upon the sea and adjacent waters. For nearly twenty years

prior to the transaction in question a part of its business was the transportation of cargoes between New York and the Barbadoes and the Windward Islands, the other defendants acting as agents in respect to this business. During some years prior to the commencement of this action the company had in its service a fleet of five or six of the highest class iron steamers, sailing at intervals of about ten days from New York to the islands, each steamer requiring about six weeks to make the trip. The steamers were kept constantly engaged in this service, and sailed regularly upon schedule days without reference to the amount of cargo then received. The regular and standard rate charged for freight up to December, 1891, from New York to Barbadoes, one of the Windward Islands, was fifty cents per dry barrel of five cubic feet, which was taken as the unit of measurement, and the tariff of charges was adjusted accordingly for goods shipped in other forms and packages. In December, 1891, the regular rate was reduced from fifty to forty cents per dry barrel. . About this time the British steamer *El Callao*, which had for some years before sailed between New York to Ciudad Bolivar in South America, transporting passengers and freight between these points, began to take cargo at New York for Barbadoes, and sometimes to other points in the Windward Islands which she passed on her regular trips to Ciudad Bolivar, sailing from New York at intervals of five or six weeks. Her trade with South America was the principal feature of her business, but such space as was not required for the cargo destined for the end of the route was filled with cargo for the islands which lay in her regular course.

The defendants evidently regarded this vessel as a somewhat dangerous competitor for a part of the business, the benefits of which they had up to this time enjoyed, and for the purpose of retaining it they adopted the plan of offering special reduced rates of twenty-five cents per dry barrel to all merchants and business men in New York who would agree to ship by their line exclusively during the week that the *El Callao* was engaged in obtaining freight and taking on cargo.

The plaintiff's firm had business arrangements with and were shipping by that vessel, and in February, 1892, they demanded of the defendants that they receive three thousand barrels of freight from New York to Barbadoes and transport the same at the special rate of twenty-five cents per barrel upon one of its steamers. The defendants then informed the plaintiffs that the rate of twenty-five cents was allowed by them only to such shippers as stipulated to give all their business exclusively to the defendants' line, in preference to the *El Callao*, and that to all other shippers the standard rate of forty cents per dry barrel was maintained. But they further informed the plaintiffs that if they would agree to give their shipments for that week exclusively to the defendants' line the goods would be received at the twenty-five cents rate. The plaintiffs, however, were shipping by the other vessel and declined this offer. Again, in the month of May, 1892, the *El Callao* was in the port of New York taking on cargo, as was also the defendants' steamer *Trinidad*. The plaintiffs then demanded of the defendants that they receive and carry from New York to Barbadoes about seventeen hundred and sixty dry barrels of freight at the rate of twenty-five cents. The defendants notified the plaintiffs that a general offer had that day been made by them to the trade to take cargo for Barbadoes on the *Trinidad*, to sail on June 4, at twenty-five cents per dry barrel, under an agreement that shippers accepting that rate should bind themselves not to ship to that point by steamers of any other line between that date and the sailing of the *Trinidad*. The defendants offered these terms to the plaintiffs, but as they were shipping by the rival vessel the offer was declined. Except during the week when the *El Callao* was engaged in taking on cargo the defendants have maintained the regular rate of forty cents to all shippers between these points, and when it reduced the rate as above described exactly the same rates, terms and conditions were offered to all shippers, including the plaintiffs, and they carried freight for other parties at the reduced rates, only upon their entering into a stipulation not to ship by the rival vessel. After the plaintiffs' demand,

last mentioned, had been refused, they obtained an order from one of the judges of the court in this action requiring the defendants to carry the seventeen hundred and sixty barrels, and the defendants did receive and transport them, in obedience to the order, at the rate of twenty-five cents, but this order was reversed at General Term. The plaintiffs demand equitable relief in the action to the effect, substantially, that the defendants be required and compelled by the judgment of the court to receive and transport for the plaintiffs their freight at the special reduced rates, when allowed to all other shippers, without imposing the condition that the plaintiffs stipulate to ship during the times specified by the defendants' line exclusively.

Whether the regular rate of forty cents, for which it is conceded that the defendants offered to carry for the plaintiffs at all times without conditions, was or was not reasonable, was a question of fact to be determined upon the evidence at the trial, and the learned trial judge has found as matter of fact that it was reasonable, and that the reduced rate of twenty-five cents granted to shippers on special occasions, and upon the conditions and requirements mentioned, was not profitable. This finding, which stands unquestioned upon the record, seems to me to be an element of great importance in the case which must be recognized at every stage of the investigation.

A common carrier is subject to an action at law for damages in case of refusal to perform its duties to the public for a reasonable compensation, or to recover back the money paid when the charge is excessive.

This right to maintain an action at law upon the facts alleged, it is urged by the learned counsel for the defendants, precludes the plaintiffs from maintaining a suit for equitable relief such as is demanded in the complaint. There is authority in other jurisdictions to sustain the practice adopted by the plaintiffs ( *Watson* v. *Sutherland,* 5 Wall. 74 ; *Menaicho* v. *Ward,* 27 Fed. R. 529 ; 54 T. R. 741 ; 3 id. 775 ; 49 Ill. 33 ; 44 O. St. 571), though I am not aware of any in this state that would bring a case based upon such facts within the usual or

ordinary jurisdiction of equity. "So far as this case is concerned it is sufficient to observe that it is now settled by a very general concurrence of authority, that a defendant cannot, when sued in equity, avail himself of the defense that an adequate remedy at law exists unless he pleads that defense in his answer. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 105 N. Y. 319; *Town of Mentz* v. *Cook,* 108 id. 504; *Ostrander* v. *Weber,* 114 id. 95; *Dudley* v. *Congregation St. Francis,* 138 id. 460; *Truscott* v. *King,* 6 id. 147.)

When the facts alleged are sufficient to entitle the plaintiff to relief in some form of action, and no objection has been made by the defendant to the form of the action in his answer or at the trial, it is too late to raise the point after judgment or upon appeal. So that, whatever objections might have been urged originally against the action in its present form, the defendants must now be deemed to have waived them. This court will not stop to examine a minor question that does not touch the merits but relates wholly to the form in which the plaintiffs have presented the facts and demanded relief, or to the practice and procedure. The time and place to raise and discuss these questions was at or before the trial, and as they were not then raised the case must be examined and disposed of upon the merits.

The defendants were engaged in a business in which the public were interested, and the duties and obligations growing out of it may be enforced through the courts and the legislative power. (*Munn* v. *Illinois,* 94 U. S. 113; *People* v. *Budd,* 117 N. Y. 1.) In England these duties are, to a great extent, regulated by the Railway and Canal Traffic Act (17 & 18 Vict. ch. 31), and by statute in some of the states, and in this country, so far as they enter into the business of interstate commerce, by act of Congress. The solution of the question now presented depends upon the general principles of the common law, as there is no statute in this state that affects the question, and the legislation referred to is important only for the purpose of indicating the extent to which business of this character has been subjected to public regulation for the

general good. There can be no doubt that at common law a common carrier undertook generally, and not as a casual occupation, to convey and deliver goods for a reasonable compensation as a business, with or without a special agreement, and for all people indifferently, and in the absence of a special agreement, he was bound to treat all alike in the sense that he was not permitted to charge any one an excessive price for the services. He has no right in any case while engaged in this public employment to exact from any one anything beyond what under the circumstances is reasonable and just. (2 Kent's Com. [13th ed.] 598 ; Story on Bailments, §§ 495, 508 ; 2 Parsons on Cont. 175 ; *Killmer* v. *N. Y. C. & H. R. R. R. Co.,* 100 N. Y. 395 ; *Root* v. *L. I. R. R. Co.,* 114 id. 300.) It may also be conceded that the carrier cannot unreasonably or unjustly discriminate in favor of one or against another where the circumstances and conditions are the same. The question in this case is whether the defendants, upon the undisputed facts contained in the record, have discharged these obligations to the plaintiffs. There was no refusal to carry for a reasonable compensation. On the contrary, the defendants offered to transport the goods for the forty cents rate, and we are concluded by the finding as to the reasonable nature of that charge. The defendants even offered to carry them at the unprofitable rate of twenty-five cents, providing the plaintiffs would comply with the same conditions upon which the goods of any other person were carried at that rate. What is reasonable and just in a common carrier in a given case is a complex question into which enters many elements for consideration. The questions of time, place, distance, facilities, quantity and character of the goods, and many other matters must be considered. The carrier can afford to carry 10,000 tons of coal or other property to a given place for less compensation per ton than he could carry fifty, and where the business is of great magnitude a rebate from the standard rate might be just and reasonable while it could not fairly be granted to another who desired to have a trifling amount of goods carried to the same point. So long as the

regular standard rates maintained by the carrier and offered to all are reasonable one shipper cannot complain because his neighbor, by reason of special circumstances and conditions, can make it an object for the carrier to give him reduced rates. In this case the finding implies that the defendants at certain times carried goods at a loss upon the condition that the shippers gave them all of their business. Whatever effect may be given to the legislation referred to, in its application to railroads and other corporations deriving their powers and franchises from the state, there can be no doubt that the carrier could at common law make a discount from its reasonable general rates in favor of a particular customer or class of customers in isolated cases for special reasons and upon special conditions without violating any of the duties or obligations to the public inherent in the employment. If the general rates are reasonable a deviation from the standard by the carrier in favor of particular customers, for special reasons, not applicable to the whole public, does not furnish to parties not similarly situated any just ground for complaint. When the conditions and circumstances are identical the charges to all shippers for the same service must be equal. These principles are well settled, and whatever may be found to the contrary in the cases cited by the learned counsel for the plaintiff originated in the application of statutory regulations in other states and countries. (*Fitchburg R. R. Co.* v. *Gage,* 12 Gray, 393 ; *Sargent* v. *B. & L. R. Corp.,* 115 Mass. 422 ; *Mogul S. S. Co.* v. *McGregor, Gow & Co.,* L. R. [21 Q. B. Div.] 544 ; affd., 23 Q. B. Div. 598, and by H. L. [17 Appeal. Cases] 25 ; *Evershed* v. *L. & N. W. Ry. Co.,* L. R. [3 Q. B. Div.] 135 ; *Baxendale* v. *E. Co. R. Co.,* 4 C. B. [N. S.] 78 ; *Branley* v. *S. E. R. Co.,* 12 id. 74.)

Special favors in the form of reduced rates to particular customers may form an element in the inquiry whether, as matter of fact, the standard rates are reasonable or otherwise. If they are extended to such persons at the expense of the general public the fact must be taken into account in ascertaining whether a given tariff of general prices is or is not

reasonable.     But as in this case the reasonable nature of the price, for which the defendants offered to carry the plaintiffs' goods, has been settled by the findings of the trial court, it will not be profitable to consider further the propriety or effect of such discrimination.     The rule of the common law was thus broadly stated by the Supreme Court of Massachusetts in the case of the *Fitchburg R. Co.* v. *Gage (supra)*. Upon that point the court said : " The recent English cases, cited by the counsel for the defendants, are chiefly commentaries upon the special legislation of Parliament regulating the transportation of freight on railroads constructed under the authority of the government there ; and consequently throw very little light upon questions concerning the general rights and duties of common carriers, and are for that reason not to be regarded as authoritative expositions of the common law upon these subjects.     The principle derived from that source is very simple.     It requires equal justice to all.     But the equality which is to be observed consists in the restricted right to charge a reasonable compensation and no more.     If the carrier confines himself to this no wrong can be done.     If, for special reasons in isolated cases, the carrier sees fit to stipulate for the carriage of goods of any class for individuals, for a certain time, or in certain quantities, for a less compensation than what is the usual, necessary and reasonable rate, he may undoubtedly do so without entitling all parties to the same advantage."

In *Evershed* v. *L. & N. W. Ry. Co.* (*supra*) Lord Bramwell remarked : " I am not going to lay down a precise rule, but, speaking generally, and subject to qualification, it is open to a railway company to make a bargain with a person, provided they are willing to make the same bargain with any other, though that other may not be in a situation to make it. An obvious illustration may be found in season tickets."     The authorities cited seem to me to remove all doubt as to the right of a carrier, by special agreement, to give reduced rates to customers who stipulate to give them all their business, and to refuse these rates to others who are not able or willing to

so stipulate, providing, always, that the charge exacted from such parties for the service is not excessive or unreasonable. The principle of equality to all, so earnestly contended for by the learned counsel for the plaintiffs, was not, therefore, violated by the defendants, since they were willing and offered to carry the plaintiffs' goods at the reduced rate, upon the same terms and conditions that these rates were granted to others, and if the plaintiffs were unable to get the benefit of such rate it was because, for some reason, they were unable or unwilling to comply with the conditions upon which it was given to their neighbors, and not because the carrier disregarded his duties or obligations to the public. The case of *Menacho* v. *Ward* (27 Fed. Rep. 529) does not apply, because the facts were radically different. That action was to restrain the carrier from exacting unreasonable charges habitually for services, the charges having been advanced as to the parties complaining, for the reason that they had at times employed another line. It decides nothing contrary to the general views here stated. On the contrary, the court expressly recognized the general rule of the common law with respect to the obligations and duties of the carrier substantially as it is herein expressed, as will be seen from the following paragraph in the opinion of Judge Wallace:

"Unquestionably a common carrier is always entitled to a reasonable compensation for his services. Hence, it follows that he is not required to treat all those who patronize him with absolute equality. It is his privilege to charge less than a fair compensation to one person, or to a class of persons, and others cannot justly complain so long as he carries on reasonable terms for them. Respecting preference in rates of compensation, his obligation is to charge no more than a fair return in each particular transaction, and, except as thus restricted, he is free to discriminate at pleasure. This is the equal justice to all which the law exacts from the common carrier in his relations with the public."

But it is urged that the plaintiffs were in fact the only shippers of goods from New York to Barbadoes by the *El*

*Callao*, and, therefore, the condition imposed that the reduced rate should be granted only to such merchants as stipulated to give the defendants their entire business, while in terms imposed upon the public generally, was in fact aimed at the plaintiffs alone. The trial court refused to find this fact, but, assuming that it appeared from the undisputed evidence, I am unable to see how it could affect the result. The significance which the learned counsel for the plaintiffs seems to give to it in his argument is that it conclusively shows the purpose of the defendants to compel the plaintiffs to withdraw their patronage from the other line, to suppress competition in the business, and to retain a monopoly for their own benefit. Conceding that such was the purpose it is not apparent how any obligation that the defendants owed to the public was disregarded. We have seen that the defendants might lawfully give reduced rates in special cases to particular customers and refuse them in others where the conditions are different or to the general public where the regular rates are reasonable. The purpose of an act which in itself is perfectly lawful or, under all the circumstances, reasonable, is seldom, if ever, material. (*Phelps* v. *Nowlen*, 72 N. Y. 39; *Kiff* v. *Youmans*, 86 id. 324.) The mere fact that the transportation business between the two points in question was in the hands of the defendants did not necessarily create a monopoly, if the general rates maintained were reasonable and just. It is not pretended that the owners of the *El Callao* proposed to give regular service to the general public for any less. When the service is performed for a reasonable and just hire the public have no interest in the question whether one or many are engaged in it. The monopoly which the law views with disfavor is the manipulation of a business in which the public are interested in such a way as to enable one or a few to control and regulate it in their own interest and to the detriment of the public by exacting unreasonable charges. But when an individual or a corporation has established a business of a special and limited character, such as the defendants in this case had, they have a right to retain it by the use of all lawful means. That was

what the defendants attempted to do against a competitor that engaged in it, not regularly or permanently, but incidentally and occasionally. The means adopted for this purpose was to offer the service to the public at a loss to themselves whenever the competition was to be met and when it disappeared to resume the standard rates, which, upon the record, did not at any time exceed a reasonable and fair charge. I cannot perceive anything unlawful or against the public good in seeking by such means to retain a business which it does not appear was of sufficient magnitude to furnish employment for both lines. On this branch of the argument the remarks of Lord COLERIDGE in the case of the *Mogul S. S. Co.* v. *Mc-Gregor* (*supra*) are applicable : " The defendants are traders with enormous sums of money embarked in their adventure, and naturally and allowably desire to reap a profit from their trade. They have a right to push their lawful trades by all lawful means. They have a right to endeavor, by lawful means, to keep their trade in their own hands, and by the same means to exclude others from its benefits, if they can. Amongst lawful means is certainly included the inducing by profitable offers customers to deal with them rather than with their rivals. It follows that they may, if they see fit, endeavor to induce customers to deal with them exclusively by giving notice that only to exclusive customers will they give the advantage of their profitable offers. I do not think it matters that the withdrawal of the advantages is out of all proportion to the injury inflicted by those who withdraw them on the customers who decline to deal exclusively with them dealing with other traders."

The courts, I admit, should do nothing to lessen or weaken the restraints which the law imposes upon the carrier, or in any degree to impair his obligation to serve all persons indifferently in his calling, in the absence of a reasonable excuse, and for a reasonable compensation only. But to hold, as we are asked to in this case, that the plaintiffs were entitled to have their goods carried by the defendants at an unprofitable rate without compliance with the conditions upon which it was

granted to all others, and which constituted the motive and inducement for the offer, would be extending these obligations beyond the scope of any established precedent based upon the doctrine of the common law, and would, I think, be contrary to reason and justice.

The judgment of the court below dismissing the complaint was right, and should be affirmed, with costs.

FINCH, GRAY and BARTLETT, JJ., concur; PECKHAM, J., dissents.

Judgment affirmed.