matter involved upon which the allowance could ·be based.   Dock Co. v. Libby, 45 N. Y. 499.   In Conaughty v. Bank, supra, which was an action brought to restrain the defendant from continuing in the exercise of its ·corporate franchise, and where the effect of a recovery by the plaintiff would be the forfeiture of its chartered privileges, and the distribution of its property among those who were then legally entitled to it upon dissolution, it was said that the property of the corporation was not the subject-matter involved, but it was the franchise which the action sought to prevent the defendant from using that was involved in the litigation, and, as there was no evidence of the value of the franchise, no allowance would be granted.   In Moore v. Appleby, 108 N. Y. 240, 15 N. E. 377, where the question in controversy was as to whether a vendor of real estate could ·give a good title to the property that he had contracted to convey, it was held that the value of that property was not the subject-matter involved in the action; the court saying, "The value of the subject-matter incidentally involved by the nature of the controversy is, therefore, not material."   As there is no evidence of the value of the plaintiffs' interest in the fund, or the value of the plaintiffs' right which was protected by the judgment, it follows that there was no ascertained value upon which an allowance could be based.   The order appealed from is, therefore, affirmed, with $10 costs and disbursements.   All concur.

(54 App. Div. 223.)

JOHN D. PARK & SONS CO. v. NATIONAL WHOLESALE DRUGGISTS ASS'N et al.

(Supreme Court, Appellate Division, First Department.   November 9, 1900.)

1. MONOPOLIES—RESTRAINT OF TRADE—PATENT ARTICLES.
    Manufacturers of proprietary articles contracted with a wholesale druggists association to sell their goods at 10 per cent. discount to any wholesale dealer who would not sell to retail dealers at less than the list price of the manufacturer, and not to sell to any wholesale dealer who refused to accept such agreement. *Held*, that such agreement was not illegal, as in restraint of trade, since each manufacturer had the right to sell his goods for such price, and to whom he pleased; and, each having fixed the price of his goods and terms of sale, their combination to enforce their contracts was not illegal.

2. INJUNCTION—SALE OF GOODS—REFUSAL TO SELL TO PLAINTIFF.
    Where the manufacturers of proprietary articles contracted with a wholesale druggists association not to sell their goods to wholesale dealers except on certain terms, allegations by a wholesale dealer, who refused to comply with such terms, that his business was injured by such agreement, and that the manufacturers were compelled to require such terms by compulsion from the wholesale druggists association, was not sufficient to entitle him to an injunction restraining the ·wholesale druggists association from influencing the manufacturers; since, if the manufacturers did not complain of such compulsion, a third party has no right to interfere.

Appeal from special term, New York county.

Action by John D. Park & Sons Company against the National Wholesale Druggists Association and others.   From a judgment dismissing the complaint (64 N. Y. Supp. 276), plaintiff appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGH-LIN, PATTERSON, and O'BRIEN, JJ.

Henry T. Fay, for appellant.
Henry G. Ward, for respondents.

RUMSEY, J. The plaintiff is a foreign corporation engaged in the business of selling drugs and medicines, and especially proprietary articles, so called, and has been thus engaged for a long time. The defendants are wholesale dealers in articles of the same kind, or are manufacturers of such articles. The complaint alleges that before 1881 manufacturers of these goods had been accustomed to sell them through agents direct to the retailers, giving to each agent commissions on his sales, and charging each buyer such prices and selling to him on such terms as they saw fit. The goods were sold to wholesale dealers in the same way. The result of that manner of dealing, as set up in the complaint, was that the wholesale dealers in these articles were unable to make a living profit in the business, and they set about to devise a plan by which the prices of proprietary articles should be fixed, and the wholesale dealers obtain a fair profit from dealing in them. The wholesale druggists association, which had the matter in charge, is composed of wholesale druggists, who are active members and have control of the association, and manufacturers of proprietary articles, who are associate members, but have no voice or vote in the association. To carry out the plans of the dealers it was proposed that the manufacturers should agree to sell their goods to the wholesale dealers at fixed prices, charging one dealer no more than another, and making no allowance to any of them which would enable the one favored to obtain goods indirectly at less than the price fixed, but requiring of every dealer that he upon his part would not sell to retail dealers, or any one else, at less than the proprietors' list prices; and upon the giving of such a contract the manufacturer would allow to the wholesaler a discount of 10 per cent. on the price charged him, which discount was to be the same to all buying the manufacturers' goods, and should be the sole profit to be made by the wholesale dealer from his dealing in those articles. It is alleged in the complaint that two-thirds of the wholesale dealers in these goods in the United States, representing 90 per cent. of the whole business in such articles, acceded to this proposition, but that the plaintiff refuses so to do. It is further alleged that the wholesale druggists association "compelled" the manufacturers to adopt this system, and that, in consequence of such compulsion, the manufacturers agreed to make sales in the way prescribed by the plan, and to allow the discount only to those wholesale dealers who accepted the plan, and refused to sell to any one who did not so agree. It is further alleged that for the purpose of injuring the plaintiff's business, and to compel it either to accede to this plan or to prevent it from obtaining goods wherewith to supply its customers, steps were taken to find out what dealers supplied the plaintiff, and such dealers, when ascertained, were placed upon "cut-off" lists. Those lists were sent to the various manufacturers, so that they should not sell to

the persons named in them, thereby making it impossible for the plaintiff to obtain the goods to carry on its business. These general allegations of the complaint are repeated over many pages, but the foregoing states substantially the cause of action relied upon by the plaintiff, except that the allegations stating the injury done the plaintiff's business, and the damage accruing to it thereby, are not here set out in detail. The relief sought is that the contracts and agreements set out in the complaint may be declared illegal; that the wholesale druggists association and its members may be restrained from making any effort to induce manufacturers to adopt or use the scheme for the sale of their goods, or from making any effort to induce those who have adopted it to continue in use that plan, or to limit their sale of goods in accordance with it, or to do any act to carry it into effect, or from refusing to sell their goods to the plaintiff; and it also demands that the manufacturers be restrained from using or adopting the plan, or taking any action under it.

The defendants who have appeared demur to the complaint upon several grounds going not only to the jurisdiction of the court, but to the sufficiency of the cause of action. In the view we have taken of the case, however, we have only examined the complaint to discover whether it sets up a cause of action sufficient to enable the plaintiff to obtain equitable relief, and the question of the jurisdiction of the court over the defendants who are nonresidents or foreign corporations has not been considered. The injury to the plaintiff arises from the fact that the manufacturers of patent medicines have agreed together to fix the prices of their goods, and the conditions under which they are willing to sell them. Except for this agreement, it is quite clear that the plaintiff would have no reason to complain. It is not alleged that the manufacturers refuse to sell to the plaintiff if it will comply with the rules which they have established for dealing in their wares, but the gravamen of the complaint is that the manufacturers refuse to deal with the plaintiff except upon such terms and conditions as they have established; and the question arises, in the first place, therefore, whether the manufacturers of goods of this description have the right to fix the prices at which they will sell their goods and the terms which they require of the different buyers as a condition of permitting them to purchase the goods which they have for sale. In the examination of this question it is not to be forgotten that the articles sold are not necessities of life, as to which public policy might restrain a combination to fix an exorbitant price; nor have the manufacturers combined to establish a price for any particular article, but each manufacturer fixes his own price for the goods which he makes, and the agreement is simply to require the dealers to whom he sells to supply their customers at the price which the manufacturer has fixed for his own goods. It is not a combination of manufacturers to fix and establish prices, but an agreement as to the terms upon which goods of the same general character, but of different kinds, shall be sold, and to insure their sale at the price which the manufacturer of each kind sees fit to put upon the goods

which he makes. It cannot be denied that each manufacturer has the right to refuse to sell to any one if he sees fit. If he chooses to make his goods, and sell them, he has the right to fix any price he chooses upon them. Not only so, but he has the right to select his own customers. He may agree to dispose of all his goods to one person, or he may be willing to supply the whole trade except one person; and whatever he chooses to do is a matter with which the law has no concern, because the goods are his, to be kept or sold, as he pleases. So he may not only fix his own price, but he may impose such terms as he sees fit, or can exact from his customers. These matters are absolutely within his own control. If each manufacturer is at liberty thus to control the sale of his goods, undoubtedly all may, if they see fit, agree together to enforce conditions which each one seeks to impose upon the dealing with the article which he makes. The action of each manufacturer in fixing prices and imposing conditions of sale is undoubtedly legal. Having fixed the prices and the terms of sale, they combine for the purpose of enforcing their contracts. As the end to be accomplished is legal, and they do not propose to take any step in carrying it into effect which each might not properly take if he was working for himself, no right of action can arise to any one as a result of their combination. That the manufacturers have this right is a necessary deduction from the cases, in support of which the following may be cited: Walsh v. Dwight, 40 App. Div. 513, 58 N. Y. Supp. 91; Lough v. Outerbridge, 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674; Continental Fire Ins. Co. v. Board of Underwriters of the Pacific (C. C.) 67 Fed. 310; Anderson v. U. S., 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300; Steamship Co. v. McGregor, 15 Q. B. Div. 476, affirmed in [1892] App. Cas. 25. Indeed, some of these cases go to the extent of holding that a combination to keep up prices, which has for its express object the destruction of the business of a competitor, is not unlawful at common law; but it is not necessary here to consider whether the law does benefit such a combination.

We do not understand that the right of the manufacturers, having fixed their prices, to agree together for the purpose of imposing terms and conditions upon which they shall sell their goods, is disputed by the appellant, and in what was said in that regard we concur with the opinion of the learned justice at the special term. But it is said that such is not the cause of action presented by the complaint. The plaintiff claims that its real grievance arises, not from the agreement of the manufacturers solely, but because of the fact that the members of the wholesale druggists association, who are competitors of the plaintiff, have combined together for the purpose of compelling the manufacturers to adopt a particular agreement, which, if enforced, will take away its business; and so, while it is aggrieved by the acts of the manufacturers, yet the moving cause is the compulsion of the members of the association, because of which the manufacturers have agreed to do a thing which they would not have done in the absence of that compulsion. It is said that such was the cause of action recognized by this court when the case was here before on the appeal from the order striking out

certain provisions of the complaint as irrelevant and redundant. It is quite true that in the opinion then given by the court it was recognized that such a cause of action was sought to be set up, but it was not said that the facts thus set up gave to the plaintiff a right to the relief demanded. No such question was presented. The only question the court was then called upon to decide was whether certain allegations in the complaint were redundant or irrelevant to the cause of action which the plaintiff sought to set out. To decide that question it was necessary to consider what the cause of action was, in order to determine whether the allegations bore upon it or not. The court therefore accepted at that time the plaintiff's statement as to what the cause of action was which it sought to present, and examined each allegation with reference to that claim of the plaintiff only; but in reaching a decision in that case the court was not called upon to consider anything more than the pertinence of each allegation in view of the claim made by the plaintiff; and although the court said that the cause of action set up in the complaint was substantially what the plaintiff now claims, yet it did not say, and could not have said, that the facts were sufficient to establish that cause of action. John D. Park & Sons Co. v. National Wholesale Druggists Ass'n, 30 App. Div. 508, 52 N. Y. Supp. 475. There is no suggestion in the complaint that the manufacturers, having been compelled to take these steps, are not willing to continue this mode of transacting business. They certainly have not complained of it so far as appears, and if they do not complain of it, and are doing only a thing which the law permits them to do, it is difficult to see why a third party, who has no real grievance except that he is not willing to buy goods upon their terms, should be permitted to come in and interfere with them.

We have examined the cases cited by the appellant to establish its contention, and we do not see that any of them contravene the principles laid down above. The case of Curran v. Galen, 2 Misc. Rep. 553; 22 N. Y. Supp. 826; 77 Hun, 610, 28 N. Y. Supp. 1134; 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802,—does not sustain the plaintiff's contention. In that case it appeared that the plaintiff had a valid contract for work with the brewer, who discharged him at the demand of the defendant; and it is very clear that the plaintiff was thereby damaged, because, although he may not have had an enforceable contract with the brewer, yet the evidence showed that his employer was willing to keep him, and would have kept him, but for the act of the defendant in insisting upon his discharge. But in this case the plaintiff has no contract with any of the manufacturers, nor are they willing to give it one, except upon certain terms, with which it refuses to comply. There is no sort of a parallel between the cases.

We cannot find, from an examination of the complaint, that any facts are alleged warranting the charge that the defendants are engaged in watching the plaintiff's business, or have been guilty of anything like spying or picketing which calls for the interference of the court. Upon the whole case we do not see that the plaintiff

has established any right to an injunction because of any of the facts alleged in the complaint.

The judgment must therefore be affirmed, with costs to the respondents. All concur.

---

## In re ERNST.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

ATTORNEY AND CLIENT—FEES.

> Where an attorney at law retained more than 50 per cent. of money collected for his client, an application for an order to compel him to pay over the money retained should not be dismissed on a mere averment that he retained it as compensation, but a reference should be ordered to take proof as to the value of the services.

Appeal from special term, New York county.

Application by Alois L. Ernst for an order to compel one Hawes to pay over money collected as attorney for applicant. From an order denying the application, said Ernst appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Max Cohen, for appellant.
Herbert Parsons, for respondent.

McLAUGHLIN, J. From the moving papers it appears that in January, 1895, Charles Casper & Co., a domestic corporation, executed and delivered to the petitioner, Alois L. Ernst, its promissory note for $1,500, and as collateral security for the payment of the same it assigned to him certain fire insurance policies. Thereafter the property covered by the policies was destroyed by fire, and, certain insurance companies and underwriters having failed and neglected to pay their proportionate amount of the loss, the respondent, Hawes, as attorney for this petitioner, and also as the attorney for one Ridgway (who had theretofore been appointed receiver of the corporation), brought actions against the insurance companies and underwriters. The actions were prosecuted to judgment, and some of them were thereafter satisfied by the defendants paying the amount of them to the attorney. There is no dispute between the parties but that Hawes collected the sum of $2,254.89 upon the judgments, and that he has only paid to the petitioner the sum of $1,100. Application was made to the court to compel him to pay over a portion of the balance, and he there claimed that he had a right, as attorney, to retain such balance in payment of his fees for legal services and for disbursements made by him in the prosecution of the actions. The application was denied, and Ernst has appealed.

We are of the opinion that the application should have been granted to the extent of appointing a referee to take proof of the facts alleged in the petition and answer, and also to ascertain the precise amount, if any, which is due from this attorney to his client.