(1 App. Div. 560.)

### REILLY v. FREEMAN et al.

(Supreme Court, Appellate Division, First Department. February 21, 1896.)

1. SPECIFIC PERFORMANCE—TRANSFER OF INTEREST IN BUSINESS.

Plaintiff and defendants entered into an agreement to engage in an enterprise in which they were to share equally, plaintiff to furnish the necessary money, and defendants to give their personal attention to the business. Defendants organized a corporation, and issued all the stock to themselves, and afterwards refused to allow plaintiff an equal share with themselves. *Held*, that plaintiff, in an action for an accounting, was entitled to the stock specifically, not on the theory of specific performance, but because his interest existed in the form of shares of stock.

2. EQUITY—ADEQUATE REMEDY AT LAW—RAISING OBJECTIONS.

The defense of an adequate remedy at law is not available unless pleaded.[1]

3. ACCOUNTING—JUDGMENT—JOINT LIABILITY.

In an action by a partner against his copartners for an accounting, it is error for the court to make a specific award of one-half the amount found due plaintiff against each of the two defendants, as their liability is joint, and plaintiff is entitled to a judgment for the whole against each of them.

[1] See, also, Ketchum v. Depew (Sup.) 30 N. Y. Supp. 794; Railway Co. v. Johnston (Sup.) 32 N. Y. Supp. 49; Gage v. Lippman (Com. Pl.) 33 N. Y. Supp. 59.

**4. ALTERNATIVE JUDGMENT—WHEN PROPER.**
　　A decree which requires the delivery of specific shares of corporate stock to plaintiff, an alternative provision for the payment of a certain sum of money is erroneous, where no evidence was given as to the value of the stock.

Appeal from special term, New York county.

Action by Garrett Reilly against Charles G. Freeman and others for an accounting. A judgment was entered in favor of plaintiff, and both parties appeal. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Treadwell Cleveland, for plaintiff.

L. Laflin Kellogg, for defendants.

PATTERSON, J. The plaintiff and defendants have appealed from the judgment herein. The plaintiff really seeks a modification of it, while the defendants ask for an absolute reversal. We will first considered the defendants' appeal.

The pleadings present very simple issues of act. The plaintiff claims to be entitled to receive from the defendants some 1,500 shares of the common stock of the Retsoff Mining Company, or, alternatively, the value of such shares. The action is in form for an accounting of the results of a joint enterprise, in which it is alleged that they engaged upon an agreement to share equally in whatever might be realized as the outcome of the venture. The first issue raised relates to the existence of an agreement of the character claimed by the plaintiff, upon which the court below found, on sufficient evidence, in favor of the plaintiff. The testimony establishes that the defendant Freeman, in the year 1883, called the attention of the plaintiff to the then-supposed existence of salt deposits in Livingston county, in the state of New York. It is conceded that some arrangement was then made by and between the plaintiff and the defendant Freeman and one Varker (an original defendant, who has died since the judgment was entered herein, and whose executrix has been substituted as defendant in his place), by which the plaintiff was to advance money for prospecting and exploration, and Freeman and Varker were to superintend such experimental work, and to procure options for the purchase of lands on or under which the salt deposits might be found. Thus far there seems to be no serious contradiction in the testimony. That there was a joint venture, whether it be called a partnership quoad the particular subject of it or not, is fairly established. The plaintiff did advance moneys, and all that were advanced by any one up to a certain period, and when called upon to contribute more, and being unable to do so, authorized his associates to raise money by disposal of securities in their hands belonging to him. The first stage of an attempt to put in some tangible form the subject of the enterprise they had undertaken was the creation of a corporation called the New York Rock-Salt Company. Shares of stock of that company were issued,—1 share to the plaintiff, 1 to each of the other associates, other shares were reserved for a working

capital, and 2,500 shares were issued in a certificate to Freeman and Varker. In these last-mentioned shares was included the plaintiff's one-third. No distribution of the 2,500 shares was ever made. The amount of the joint interest of the three subsequently was fixed at 1,500 shares. They were held by the defendants Freeman and Varker. At this point it is claimed by the defendants that, on the organization of the rock-salt company and the issuance of shares by it, the plaintiff's rights became fixed and determined, and consist now only of a valueless claim to his proportion of 2,500 shares of capital stock of that company. It does appear in evidence that the parties contracted for the formation of a corporation, but that first corporation never did business, the plaintiff never received his proportion of stock, and when new arrangements were made, as hereafter stated, he relinquished active participation in the affairs of the venture. But he did not abandon his interest in the project. Freeman and Varker had gone on and taken options, in which options the plaintiff was still interested. They had been secured by the money advanced by him, and, although not all actually so secured within the time originally contracted for with the owners of the land, yet notice of acceptance seems to have been given before the options expired. The only real asset of this joint venture between the parties to it were these options, which turned out afterwards to be of very valuable salt lands. It being found impossible to carry on the purpose of the venture through the rock-salt company, Freeman appears to have made efforts to induce a gentleman named Foster to come into the enterprise. Mr. Foster consented. A new corporation was created, called the Empire Salt Company, to which Freeman and Varker conveyed all the options or lands embraced in the options, thus leaving the rock-salt company without any valuable asset. Mr. Foster seems to have had the dictation of the terms on which he would enter into the adventure, and, as matter of fact, the interest of Reilly and his associates was recognized and provided for. That Reilly was included is distinctly shown by Freeman's own letter to him of February 28, 1884, in which he states: "The whole responsibility of the purchase of the land Mr. Foster assumes personally, and he also agrees to allow our interest to amount to one-quarter of the whole." Here is a direct acknowledgment from Freeman; and Varker knew, as his letter of January 4, 1884, shows, that Reilly's interest, or some of it, still remained in him. In this organization of the Empire Company shares were allotted to Freeman and Varker, and Reilly was entitled to one-third of them. But the Empire corporation was not satisfactory to Mr. Foster, and he caused still another one to be formed, called the Retsoff Company, which issued shares, of which 6,000 were given to Freeman and Varker, being in the proportion of 5 in the last to 1 in its predecessor corporation. That Reilly's third interest is traced into these shares was found by the judge below on evidence satisfactory to him and to us. Freeman and Varker recognized the plaintiff's right to participate in the shares allotted to them. They sent him a certificate for 500 shares, Freeman saying "because it was right"; but they suppressed the fact

that they had received 6,000 shares, which fact was not discovered by Reilly until late in the year 1895. There was quite enough evidence to justify the conclusion of the court below that there was one continuous series of transactions from the initial agreement between the plaintiff and Freeman and Varker down to the receipt by the latter of the 6,000 shares in the Retsoff Company, in which the three parties named were jointly interested, and that, out of the 6,000 shares which were the ultimate proceeds of those transactions, the plaintiff was entitled to his one-third. He is entitled to the stock specifically, not upon the theory of specific performance of an executory contract, as the defendants' counsel intimates is the ground upon which the special term gave the particular relief, but because, upon the proofs, it appears that in an action for an accounting it is found that the plaintiff's interest exists in the form of shares of stock in a corporation, which shares he elects to take in specie if they can be reached, and in accordance with the original agreement that a corporation should be formed, and the plaintiff's interest consequently be held or represented in the form of shares.

It is urged by the defendants that the plaintiff has an adequate remedy at law, by action for damages or for conversion; but no defense of that character is set up (Lough v. Outerbridge, 143 N. Y. 271, 38 N. E. 292), and for that reason it makes no difference whether or not the claim is well founded.

The statute of limitations is also relied on by the defendants, but the statute would not begin to run until the shares of the Retsoff Company came into the hands of the defendants, which we understand to have been in December, 1885, and this we conceive to be a suit between partners to which the 10-years limitation applied. Still v. Holbrook, 23 Hun, 517.

Five hundred shares of stock in the Retsoff Company having been delivered by the defendants to the plaintiff, there apparently remained 1,500 shares to which he was entitled, from which the trial judge deducted 200, awarding the plaintiff 1,300 shares of the stock. Just at this point the appeals of both the plaintiff and the defendants come together. The plaintiff insists that the learned judge was in error in allowing any deduction, while the defendants claim that there is a palpable error in making the allowance of only 200 shares, because there should be a much larger deduction, in consideration of the fact that the 200 shares referred to were shares of the rock-salt company, and that, if those shares are to be taken into consideration, it must be in connection with the increased amount into which they were finally transmuted of shares in the Retsoff Company. We think the fact is established that, by the original agreement at the initiation of the enterprise, Reilly contracted to furnish all the moneys that were necessary to develop the land and to launch the enterprise. He admits that he was unable to furnish those moneys in full, and particularly an amount that was required to pay one Perry for sinking a well. Correspondence between Reilly and his associates concerning his inability to advance further is contained in the record, and it is also shown that Reilly authorized the defendants to dispose of a

part of his original interest, in order that money might be raised for the purpose just mentioned. It is said by the plaintiff that he merely authorized a sale. It is true that Freeman and Varker did not make a direct and absolute sale of the shares at the time the authority was given. They pledged them, and they raised the money to pay Perry. Certainly, the plaintiff did not advance that money, and certainly he should not be permitted to retain his original interest in defiance of the fact that he failed to perform his contract in full. These 200 shares were pledged, as has been stated; and it would appear to be entirely immaterial to the plaintiff in what way those shares were disposed of, so long as he consented to an absolute relinquishment of them, in order that he might carry out the contract which he made with his associates. He does not appear ever to have protested against the course that was pursued, or to have demanded any account, but to have acquiesced in what was done; and he does not show that he was ignorant of it, or that he desired an opportunity to redeem the shares It would be inequitable now to allow his claim, that, having broken in part his own agreement, he shall stand in the transaction, after years of acquiescence, as if he had performed it literally or in strict accordance with the obligation he originally assumed. The learned judge was therefore right in his ruling in reducing the number of shares awarded from 1,500, but he lost sight of the fact that the deduction should have been made by the proportionate amount which the increased allotment of Retsoff shares bore to the rock-salt company shares, and therefore the account as to the Retsoff shares should be restated, and the plaintiff allowed 884 shares in the Retsoff Company, instead of the 1,300 shares awarded to him. This results from the following computation: These three partners had 1,500 shares of the rock-salt company's stock, each owning one-third of it, or 500 shares to each. As the plaintiff allowed this 200 shares to be disposed of, that left him 300. It left for the three, Reilly, Freeman, and Varker, 1,300, owned as follows: Freeman, 500; Varker, 500; Reilly, 300,—1,300. They exchanged this for 1,200 shares in the Empire Company, and for that they received shares of the Retsoff Company, in the proportion of 5 to 1. But they had only 1,200 shares of Empire stock, whereas they had had 1,300 shares of the rock-salt company stock. They must share in the Empire stock in the proportions in which they held the rock company's stock, viz.:

Freeman, five-thirteenths of 1,200......................................... 461.54
Varker, five-thirteenths of 1,200......................................... 461.54
Reilly, three-thirteenths of 1,200......................................... 276.92
                                                                          ————
                                                                          1,200.00

The distributed shares in the Retsoff stock would therefore stand thus, viz.:

Freeman, 461.54x5 ........................................................ 2,307.70
Varker, 461.54x5 ........................................................ 2,307.70
Reilly, 276.92x5 ........................................................ 1,384.60
                                                                          ————
                                                                          6,000.00

The plaintiff has received 500, which being deducted from his 1,384.60 leaves 884.60.

The appeal taken by the plaintiff brings up also the question of the nature of the judgment to which he is entitled. We think it was error in the court below to separate the accountability of the defendants, and to make a specific award of one-half of the shares against each of the defendants, Freeman and Varker. Their liability to account is a joint one. They, without the consent of the plaintiff, distributed the shares, acting without consulting him, and disposing of the property as if it were altogether their own. He should not be remitted to a mere individual claim against each for a proportionate share, but allowed to pursue his remedy against both, and to get shares from whichever of them will be able to comply with the terms of a decree; and the judgment in that respect must be modified.

It is also obvious that a serious error has been made in the granting of an alternative judgment for distinct sums of money in case the defendants do not comply with the terms of a decree requiring the delivery specifically of the shares of the Retsoff Company. The learned judge below acted without any evidence whatever before him on the subject of the value of the stock of the Retsoff Company. There is nothing to justify a finding that the stock was actually worth its par value, which is the necessary effect of the decision as made. Our conclusion upon the whole case is that the judgment must be modified, and that it should be provided by the decree that the plaintiff is entitled to recover from the defendants jointly 884.60 shares of the capital stock of the Retsoff Mining Company; that it be adjudged that the defendants transfer, under the direction of a referee to be appointed, such 884.60 shares to the plaintiff; that, in the event of their not doing so, they jointly and severally be adjudged to pay the value of those shares, or so many of them, as they shall not transfer, such value to be fixed as of the entry of the decree hereon; that, in addition thereto, the defendants jointly and severally pay to the plaintiff the amount of dividends declared upon the 884.60 shares of stock from the time they received the same up to the present time, with interest on the amount of each dividend from the date of its payment to them; that a referee be appointed to take proof of the value of the shares and of the amount of such dividends; and that he report to the court at special term his proceedings and conclusions upon the matters referred to him; and, upon the coming in of the report, either party may move at special term for a final decree.

Judgment will be modified as herein suggested, without costs to either party on these appeals. All concur.