REILLY v. FREEMAN et al.

(Supreme Court, Appellate Division, First Department.  June 12, 1903.)

1. PARTNERSHIP—ACCOUNTING—CORPORATE STOCK—VALUE—EVIDENCE.
   In an action for a partnership accounting, evidence considered, and *held* insufficient to sustain a finding that certain shares of stock were worth $75 per share at the time they were purchased by the firm.

2. SAME—ADMISSIBILITY.
   Upon an issue as to the value of the property of a corporation the minutes of the corporation containing the report of an expert employed at the time of its organization to examine and report on the value of the property were inadmissible.

Appeal from Special Term, New York County.

Action by Garrett Reilly against Charles Q. Freeman and another. From the judgment defendants separately appeal, and from a part thereof plaintiff appeals.  Reversed.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Treadwell Cleveland, for plaintiff.
Frank S. Black, for defendants.

LAUGHLIN, J.  The action is for a copartnership or joint venture accounting.  Upon a former appeal from a final judgment after a trial at Special Term, this court, in an opinion fully stating the facts discussed and decided all questions presented, except the value of the capital stock of the Retsof Mining Company on the 16th day of December, 1885, and it in effect changed the final judgment, from which the appeal was taken into an interlocutory judgment, and appointed a referee to take proof and determine the value of said stock on said day, and interest thereon, and the amount of dividends received by the defendants upon 884.60 shares which had been issued to them, as to which the plaintiff was entitled under the decision of this court, and interest thereon.  Reilly v. Freeman et al., 1 App. Div. 560, 37 N. Y. Supp. 570.  A motion for a reargument was subsequently made and denied.  2 App. Div. 620, 38 N. Y. Supp. 1148.  The only questions open to review in this court, therefore, are those left open by the interlocutory judgment and order of reference.  The interlocutory judgment adjudges that the plaintiff is entitled to recover from the defendants, jointly and severally, 884.60 shares of this stock, together with dividends received by them thereon, and interest on such dividends, and that upon the coming in of the referee's report a final judgment may be entered directing the defendants to transfer said shares of stock to the plaintiff, and to pay the dividends received by them, and interest, "and, in the event of their failure to so transfer said stock and pay the amount of such dividends and interest, they be adjudged jointly and severally to pay to the plaintiff the value of such shares and interest value as fixed by the referee."  The referee appointed by the interlocutory judgment heard the parties and their evidence, and made a report, in which he found, among other things, that the value of the stock on the 16th day of December, 1885, was $75 per

share. His report shows that he reached this conclusion on account of a sale of this stock on the 18th day of December, 1885, at that rate per share, where both vendor and vendee were acquainted with the facts, and presumably knew the actual value of the property. The defendants excepted to the report and to this finding. The report was modified in some respects, but not in this respect, and confirmed at Special Term, and final judgment was entered as directed in the interlocutory judgment.

The defendant appellants contend that the judgment should be reversed, and a new reference ordered, on two grounds: First, that the referee received incompetent evidence under this objection and exception; and, second, that the finding that the stock was worth $75 per share on the 16th day of December, 1885, was not warranted by the evidence. We think these contentions are well founded, and that the judgment should be reversed upon both grounds. The record before us does not sustain the report of the learned referee that there was a sale of this stock on the 18th day of December, 1885, at $75 per share. The evidence offered by the plaintiff on that subject was given by William E. Trotter. He testified, in answer to leading questions, that he purchased 25 shares of this stock about the year 1885, at $75 per share, but that he had nothing by which to fix the date; that he only made one purchase after his original holding, and that he was sure the amount was 25 shares; that he understood it was treasury stock, and he purchased it from the company through his brother, A. W. Trotter; that at that time he already held something like 300 shares. On cross-examination he said he could not say that this purchase was made on the 18th day of December, 1885; that he did not know when it was made, except that it was "some twelve or thirteen years ago." In answer to this question, "Then it may have been 1886 or 1887?" he said, "I cannot fix the date, sir." His testimony was given on the 28th of December, 1899. If the purchase occurred 12 or 13 years before that time, it was made on the last of December, 1886, or 1887. Counsel for the plaintiff relies upon the stock ledger, a copy of which is printed in the record, to fix the date. It appears therefrom that on the 18th day of December, 1885, William E. Trotter purchased 75 shares of stock, and the entry is "By W. E. Trotter" which means, we take it, that the purchase was made by or through him. Consequently this entry does not sustain the plaintiff's contention, for according to his own witness the purchase which was made at the rate of $75 per share consisted of only 25 shares, and was made not through E. M. Trotter, but through A. W. Trotter. It appeared by the stock ledger, and was not controverted, that on the 16th day of December, 1885, Alfred W. Trotter became trustee of the treasury stock of the Retsof Mining Company. He was called as a witness for the defendants, and testified that he sold some of this treasury stock to his brother, William E. Trotter, but that none of it was sold for four or five years after the organization of the company, which was in December, 1885, and he testified positively that none of it was sold to William E. Trotter in December, 1885. Turning again to the stock ledger, we find an entry made under date of December 30, 1889, of a purchase by William E. Trotter of 25 shares of stock "By A. W. Trotter, Trust., Pfd."

This corresponds with the number of shares which William E. Trotter testified he purchased at the rate of $75 per share, and it corresponds also with his testimony that he purchased them through his brother and that they were treasury stock. It further appears by the stock ledger that he owned upwards of 300 shares of the stock at this time, which also tends to show that the purchase to which his evidence relates is the purchase on December 30, 1889, and not on December 18, 1885. The plaintiff also proved another sale of 10 shares some time about 1886 at $60 per share. The defendants proved a sale of this stock in March, 1886, at $30 per share. This is the only new evidence introduced that was not in the original record previously reviewed by the court. The evidence relating to the value of this stock on the former appeal was deemed insufficient to support the finding made at the Special Term that the stock was at the time in question worth par. It would seem to follow, therefore, that the finding that the stock was worth $75 per share cannot be sustained by this evidence.

Upon the organization of the Retsof Mining Company it employed an expert to examine and report on the value of the plant and property of the Empire Salt Company. He made a report, and it was spread upon the minutes of the Retsof Company in full, and subsequently the Retsof Company purchased the property. The referee received in evidence, under the plaintiff's objections and exception, that it was immaterial, irrelevant, and incompetent; the minutes of the company showing this report. It is manifest that this report was received as bearing upon the value of the stock of the Retsof Company, for that was the only issue before the referee to which it in any manner related, and the report of the referee shows that he attached considerable importance to it. It is clear that this was not competent evidence on the question of the value of the stock. The records of a corporation, when properly proved, are competent evidence of corporate action; but they are not evidence of the truth of the recitals such as are contained in this relating to the value of the property which the expert had been employed to examine. It was competent to show the value of the property of the corporation as bearing upon the value of this stock. If the expert had been called as a witness and qualified, he might have proved the facts relating to the value, and have given his opinion as to the value as stated in his report; but this record of his report was purely hearsay, and utterly incompetent. It would seem that from the corporate records of purchases and sales of stock witnesses could be found who could testify as to the price paid or obtained, and that the time of the sales could then be identified by the records, but, as this corporation had been organized less than a month on the 16th of December, 1885, the date to which the inquiry concerning the value of the stock relates, it may be difficult to obtain satisfactory evidence of the value of the stock from purchases and sales. However, from such evidence of that character as can be obtained and from the value of the property of the corporation, taken in connection with the fact which appeared in the main record before this court on the former appeal that all of the stock was issued in payment for property obtained, which

the statutes forbid unless the property was of the value of the stock, it would seem that there should be no difficulty in ascertaining the real value of this stock on the 16th of December, 1885.

It follows that the final judgment should be reversed and vacated, and the matter referred back to the same referee, to proceed anew under the former order and interlocutory judgment of this court. All concur.