PEOPLE v. AMERICAN ICE CO.

(Supreme Court, Trial Term, New York County. December 10, 1909.)

1. MONOPOLIES (§ 12*)—COMBINATIONS IN RESTRAINT OF TRADE.

It is the policy of the common law and the purpose of the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), prohibiting combinations whereby a monopoly may be created, or competition restrained, to keep free and unfettered the prosecution by individuals of any lawful business, and to protect competition in trade and commerce for the protection of the public.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

2. MONOPOLIES (§ 12*)—STATUTES—CONSTRUCTION—"ARRANGEMENT."

The word "arrangement" in the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), making every "contract, agreement, arrangement or combination" whereby a monopoly may be created, or whereby competition may be restrained, unlawful, has a broader meaning than either the word "contract," "agreement," or "combination," and it may include each and all of these things, and more, and means the disposition of measures for the accomplishment of a purpose, and a structure or combination of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

things in a particular way for any purpose, and one buying the business of his competitors under an agreement binding them not to engage therein for a specified time within specified territory, for the purpose of creating a monopoly, or whereby competition may be restrained, makes an "arrangement" prohibited by the act.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 1, p. 500.]

3. MONOPOLIES (§ 12*)—COMBINATIONS IN RESTRAINT OF TRADE.

A purchase of a going business accompanied by an agreement by the seller not to engage in the same business for a limited time, and within a prescribed territory, made with no ulterior purpose of establishing a monopoly or preventing competition, is not illegal under the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), prohibiting combinations whereby a monopoly may be created, or competition restrained, but such a purchase for the purpose of creating a monopoly so as to be able to control prices is illegal.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

4. MONOPOLIES (§ 12*)—COMBINATIONS IN RESTRAINT OF TRADE.

A contract whereby the seller of an ice business binds himself not to engage in such business for a specified term within a specified territory restricts the free pursuit in the state of a lawful business; and, if taken by the buyer for the purpose of creating a monopoly within the state, is illegal under the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), prohibiting combinations whereby a monopoly may be created, or competition restrained.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

5. MONOPOLIES (§ 12*)—ACTS IN RESTRAINT OF TRADE—INTENTION—EVIDENCE.

The jury in determining whether a corporation engaging in the ice business in the city of New York, which procured contracts from competitors whereby the latter sold their businesses and bound themselves not to engage therein within a specified time within described territory, procured the contracts for the purpose of creating a monopoly in violation of the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), must consider all the accompanying facts, including the facts that the restrictive agreements included greater territory than that in which the selling competitor had previously done business, and that the corporation procured a great number of such contracts.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

6. CRIMINAL LAW (§ 410*)—EVIDENCE—ADMISSIONS.

The jury should also consider the declarations of the officers and agents of the corporation made in the discharge of their duties as to the policy of the corporation and what it had accomplished or was seeking to accomplish, together with what was done in other ways and by other means in the conduct of the business of the corporation.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 897; Dec. Dig. § 410.*]

7. CRIMINAL LAW (§ 347*)—INTENT—EVIDENCE.

Where the guilt of accused depends on the intent with which an act is done, collateral facts in which he bore a principal part may be shown to establish a guilty intent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 792–800; Dec. Dig. § 347.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

8. MONOPOLIES (§ 31*)—COMBINATIONS—OFFENSES—EVIDENCE.

On the trial of a corporation engaging in the ice business for violating the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), by purchasing the businesses of competitors and binding them not to engage in such business within a specified time within described territory, evidence of the methods employed by the corporation in its efforts to destroy competition, and to acquire the business of independent ice dealers by offering to sell ice to the customers of such dealers at any price which would secure their patronage, and by raising the price of ice at the ice bridges, so that the independent dealers could not pay the price asked and supply their customers except at financial loss, was admissible to show the intent with which the business of competitors and the restrictive agreements were obtained.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. § 31.*]

9. MONOPOLIES (§ 12*)—OFFENSES—LIABILITY.

A corporation becoming the owner of all or substantially all of the stock of existing corporations is not criminally liable for their acts in procuring before its own organization contracts for the purpose of creating a monopoly, but where, after its acquisition of such stock, it makes use of such contracts to maintain an arrangement to create a monopoly and prevent competition, it is liable under the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), prohibiting such combinations.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

10. MONOPOLIES (§ 12*)—OFFENSES—LIABILITY.

A corporation owning and controlling subordinate corporations, which, under its direction and for its use, bought the business of competitors and procured from them agreements not to engage in similar business for a specified time within described territory, for the purpose of creating a monopoly, is guilty of violating the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346).

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

11. MONOPOLIES (§ 12*)—OFFENSES—LIABILITY—INTENT.

A contract whereby the seller of an ice business binds himself not to engage therein for a specified time within described territory is permissible only when innocently made without any purpose of creating or maintaining a monopoly, and a contract made with such an illegal purpose is illegal because it may prevent and restrain competition in violation of the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346).

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

12. MONOPOLIES (§ 12*)—STATUTES—CONSTRUCTION.

Anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), prohibiting every agreement or combination whereby a monopoly may be created, or whereby competition in the supply or price of any article in common use may be restrained, treats a monopoly and restraint of competition as two distinct things, as a monopoly usually restrains competition and usually is the result of a restraint of competition, but a restraint in competition may not extend to the degree of creating a monopoly, and, to vitiate contracts procured by one from his competitors on purchasing their business, it need not be shown that the arrangement results or may result in a total suppression of all competition, or in an absolute monopoly, and all that is essential is that they restrain competition and tend to deprive the public of the advantages of free competition.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

13. MONOPOLIES (§ 12*)—OFFENSES—STATUTES.
A corporation engaging in the ice business in the city of New York, which bought the business of competitors and procured from them agreements not to engage in such business for a specified period within described territory, for the purpose of creating or maintaining a monopoly, violated the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), prohibiting combinations whereby a monopoly may be created or competition restrained, though it did not subsequently raise prices.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

14. MONOPOLIES (§ 12*)—OFFENSES—NATURE OF "MONOPOLY."
A monopoly condemned by the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), prohibiting combinations whereby a monopoly may be created, or competition restrained, need not be an absolute one, excluding all competition, but a monopoly is created where, as the result of effort to that end, previously competing businesses are so concentrated in the hands of a single person or corporation, or in a few persons or corporations, that they have power to practically control prices of a commodity, and thus suppress competition.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 5, pp. 4570–4574.]

15. MONOPOLIES (§ 12*)—OFFENSES—ACTS CONSTITUTING.
A corporation engaging in the ice business in the city of New York, which establishes a monopoly covering a part of the borough of Manhattan, or of one district in the borough, so that the consumers in that portion of the city are deprived of the benefit of free competition, is guilty of creating a monopoly in violation of the anti-monopoly act (Consol. Laws, c. 20, §§ 340–346).

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

16. MONOPOLIES (§ 12*)—OFFENSES—ACTS CONSTITUTING.
The anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), punishing every person making or attempting to make any contract or combination whereby a monopoly may be created, or competition restrained, makes an attempt to create a monopoly unlawful, and one who attempts to create a monopoly by buying the business of his competitors and procuring from them agreements not to engage in such business for a specified period within described territory, and by doing any act for the consummation thereof, as by keeping such contracts in force and attempting to derive benefit therefrom, is guilty of violating the anti-monopoly act, though it failed of its purpose, and the creation of a monopoly became practically impossible.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

17. CRIMINAL LAW (§ 150*)—LIMITATION OF PROSECUTION—CONTINUING OFFENSE.
The anti-monopoly act (Consol. Laws, c. 20, §§ 340–346), prohibiting combinations whereby a monopoly is created, or competition restrained, or the doing of any act for the consummation thereof, makes it unlawful to make or attempt to make any such combination or to do any act pursuant thereto, and prohibits the keeping alive of an original unlawful combination, and a corporation doing any act within two years prior to the finding of the indictment in furtherance of its combination to create a monopoly and restrain competition may be convicted, though the contracts were entered into more than two years before the finding of the indictment, so that limitations would bar a prosecution based on the en-

tering into of the arrangement to create a monopoly or restrain competition.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 274; Dec. Dig. § 150.*]

18. CRIMINAL LAW (§§ 308, 561*)—REASONABLE DOUBT—PRESUMPTION OF INNOCENCE.

The presumption of innocence continues with accused throughout the trial until the jury is satisfied beyond a reasonable doubt of his guilt, and, unless the jury are convinced of his guilt beyond a reasonable doubt, they must return a verdict of not guilty.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 731, 1267; Dec. Dig. §§ 308, 561.*]

The American Ice Company was indicted for violating the antimonopoly act.

James W. Osborne and Roger P. Clark, for the People.
John B. Stanchfield and Thomas B. Adams, for defendant.

WHEELER, J. (charging jury). The defendant stands indicted for violating the provisions of the so-called "anti-monopoly act" of this state (Consol. Laws, c. 20, §§ 340–346). It may not be out of place for the court to state that, so far as the court has knowledge, this is the first indictment under the provisions of this act which has been brought to trial.

The title of the act describes its purpose and scope. It is entitled:

"An act to prevent monopolies in commodities of common use, and to prohibit restraints of trade and commerce, providing penalties for violations of the provisions of this act, and procedure to enable the Attorney General to secure testimony in relation thereto.

The act in terms provides:

"Section 1. Every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this state of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this state in the supply or price of any such article or commodity is or may be restrained or prevented, or whereby for the purpose of creating, establishing or maintaining a monopoly within this state of the manufacture, production or sale of any such article or commodity, the free pursuit in this state of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void.

"Sec. 2. Every person or corporation, or any officer or agent thereof, who shall make or attempt to make or enter into any such contract, agreement, arrangement or combination, or who, within this state, shall do any act pursuant thereto, or in, toward or for the consummation thereof, wherever the same may have been made, is guilty of a misdemeanor and on conviction thereof shall, if a natural person, be punished by a fine not exceeding five thousand dollars, or by imprisonment for not longer than one year, or by both such fine and imprisonment; and if a corporation, by a fine of not exceeding five thousand dollars."

The court does not understand the act just read substantially changes the provisions of the common and unwritten law as it existed prior to the passage of this statute. It has made it a penal offense, however, to do what was before declared by the common and unwritten law illegal and void.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It has been the policy of the law (and when we say the law we mean the policy of government) to keep free and unfettered the prosecution by individuals of any lawful business, and to protect competition in trade and commerce, not so much for the protection of the individual from his own contracts or improvidence, as to guard society and the public from the consequences of acts and agreements which would deprive the public of the advantages of competition and the prosecution of a lawful business.

If individuals or corporations attempt to control and monopolize the avenues of industry in which they are engaged, the law has always declared such conduct to be a menace against which public policy and the statute in question design protection. If the provisions of agreements in restraint of competition go beyond measures of self-protection and threaten the public good in a distinctly appreciable degree, they are to be restrained.

Such was the policy of the unwritten or common law, and such we understand are the objects and purposes of the statute under which this indictment was found. But whether the anti-monopoly act has or has not in fact, enlarged upon the provisions of the common law (although an interesting academic question), so far as this case is concerned is quite immaterial. It is the statute as it stands which is to be the guide of the court and jury.

At the outset of the consideration of this case the court deems it proper to admonish the jury that the American Ice Company is not on trial for unfair competition. It is not on trial for listing its competitors in business or canvassing their customers. It is not on trial for cutting prices below the cost of production. It is not on trial for destroying or injuring the ice fields of independents. Evidence tending to establish some of these things has been received in the case, but not because the defendant is on trial for doing all or any of them, for the defendant does not stand indicted for any of them, and no conviction can be had for them. The purpose for which evidence touching some of these matters was received by the court will be explained to you later in the charge. The defendant can be convicted only for the things charged in the indictment.

The indictment charges the defendant with a violation of the anti-monopoly act of this state. The indictment embraces three counts.

In the first count it charges the defendant with "doing an act pursuant to, and in, and toward, and for the consummation, of an arrangement whereby competition" in the production and sale of ice "was and might be restrained and prevented," and then proceeds to set forth in more or less detail certain contracts, agreements, and other acts on the part of the defendant by which it is claimed this was accomplished. You will note that the second section of the act makes it a criminal offense to "do any act pursuant to, or in, toward, or for, the consummation" of any unlawful contract, agreement, arrangement, or combination as prohibited by the statute. It is for an alleged violation of this provision of the act that the first count of the indictment was framed.

The second count alleges a violation of the statute by the "making and entering into an arrangement, whereby competition in the produc-

tion and supply in ice was or might have been prevented," and doing acts for the consummation thereof, sets up the same general specifications as in the first count. The second count only differs from the first in that it alleges the "arrangement" to have been made at the date of the incorporation of the defendant.

The third count charges an attempt to make and enter into an arrangement whereby a monopoly in the production and sale of ice was or might be prevented and the doing of acts for the consummation thereof, and sets forth the same specifications.

You will observe, gentlemen of the jury, that in each of the counts of the indictment the word "arrangement" is used. What constitutes an "arrangement" within the meaning of the statute? The act declares that "every contract, agreement, arrangement or combination" whereby a "monopoly * * * is created," etc., "to be against public policy, illegal and void." It is evident that the Legislature by the use of this word meant something different from a "contract" or "agreement" or a "combination." In our judgment it has a broader meaning than either the word "contract," "agreement," or "combination." It may include each and all of these things, and more. The usual and ordinary meaning of the word "arrangement" is "a setting in order"; but the better and fuller meaning of the word as used in the statute is that given in the "New English Dictionary," edited by James A. H. Murray. It is there defined as: "The disposition of measures for the accomplishment of a purpose; preparation for successful performance." It is further defined in the same dictionary as: "A structure or combination of things in a particular way for any purpose." I think these definitions of the word "arrangement" are sufficient to convey to your minds what was meant and intended by the Legislature when it passed this act.

It is the theory of the people in this case (and the indictment is drawn accordingly) that all the various contracts, agreements, acquisition of property and rights, by purchase or merger of other corporations, and the various acts set forth in the indictment and proven on this trial, constituted an "arrangement" within the meaning of the statute whereby a monopoly was created, or attempted, and competition restrained or attempted to be restrained. We are of the opinion that the theory of the indictment is correct, and that, if the people have made out a case against the defendant by the proof on this trial, then the various acts, contracts, and other things relied on are properly described, and fall within the designation and term of an "arrangement" as employed in the statute, and we so charge you as matter of law.

The disposition of this case turns very largely upon the force, validity, and effect of certain contracts made with owners of ice routes, and harvesters and producers of ice, and owners of ice bridges so called, to which we now proceed to call your attention.

As to the validity and legality of the contracts made with dealers not to compete:

The prosecution has introduced in evidence a very large number of contracts made between the defendant and certain dealers in ice in

their city. Most of these agreements took the form of bills of sale, running from the seller to the American Ice Company, in and by which the seller sold and transferred to the defendant the personal property used by him in selling and delivering ice to individual consumers, and at the same time transferred to the ice company the good will of his business. As a part of the contract the seller covenanted and agreed with the American Ice Company not to engage in the ice business in the borough of Manhattan for a term of years. In most cases the term fixed was 10 years. In some instances the restrictive clause extended beyond the limits of Manhattan, and embraced the entire city of Greater New York.

It is claimed and alleged by the people that these contracts in and of themselves, and particularly in connection with other advantages, rights, and privileges obtained and controlled by the defendant, constituted "an arrangement" made for the purpose of creating and maintaining a monopoly, and restraining competition, and violated the statute. On the other hand, the defendant contends that there was nothing illegal in any one or in all of the contracts so made. That the defendant had a perfect legal right to purchase the business and good will of any one engaged in the ice business—whether that of a retailer, or of a jobber, or wholesaler—and, in order to secure the benefit of the good will sold to it, to take back from the seller an agreement not to engage in the prosecution of the business which he sold for a valuable consideration to the defendant.

It is undoubtedly true that the purchase of a going business accompanied by an agreement not to engage in the same business for a limited time and within a prescribed district is not necessarily in and of itself an illegal transaction or a violation of the statute in question. Whether it is or is not a violation of the statute depends upon the accompanying circumstances of the case, and the purpose and object sought to be accomplished by the transaction. If the purchase of a business with such a restrictive agreement against re-engaging in it was made for the sole purpose of acquiring the business sold, and with no ulterior purpose of establishing a monopoly or preventing competition, then doubtless it would be an innocent transaction in the eye of the law, and one for which no conviction could or should be had. If, however, on the other hand, in taking and exacting from the seller these agreements the American Ice Company procured and made these contracts with the purpose and object of creating a monopoly, so as to be able to control prices, then these contracts became and are illegal agreements. They violate, not only the statute, but also the common law as it existed prior to the enactment of the statute. The statute in question furnishes the test, which is to guide the court and the jury in the determination of the validity of these contracts. It is written so plain that no one can err or mistake its meaning and import. The statute declares that:

"Every contract, agreement, arrangement, or combination, * * * whereby for the purpose of creating, establishing or maintaining a monopoly within this state of the manufacture, production or sale of any such article or commodity (i. e., a commodity of commerce), the free pursuit in this state of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void."

It goes without saying, and I charge you as matter of law, that any contract whereby the seller of an ice route or ice business bound himself not to engage or enter into the ice business for a term of years in the borough of Manhattan, or in Greater New York, is a contract and agreement, which in law and in fact restricts and prevents the free pursuit in this state of a lawful business or occupation. That proposition cannot be gainsaid or disputed. If, in addition to this, these contracts, or any of such contracts, were taken by the defendant "for the purpose of creating, establishing or maintaining a monopoly within this state" (and such is the explicit language of the statute), then such contracts are illegal and prohibited by the statute.

Therefore at the very outset in the determination of the issues presented it becomes your duty to determine with what purpose and design these contracts were made and the restrictive clause against re-embarking in business was inserted. If made to create or foster a monopoly, the contracts are illegal and a violation of the act of 1899 (Laws 1899, p. 1514, c. 690).

In determining the question as to whether or not they or any of them were made for the purpose of creating or maintaining a monopoly, you should consider all the accompanying facts and circumstances. It is manifest from the evidence that in most cases where the individual independent dealer sold his business to the American Ice Company that dealer had a comparatively small route in which he served a limited number of customers along and upon a few streets, and in a restricted district. Perhaps all that would have been necessary to secure to the defendant the benefit of the business and good will sold would have been an agreement on the part of the seller not to interfere by attempting to sell to his former or present customers or to others within his district. Nevertheless we find the restrictive clause in most of these agreements prohibiting the seller from conducting any ice business anywhere in the borough of Manhattan, and in some instances enlarging the restricted territory to the boundaries of Greater New York. The fact that the territory in which the dealer bound himself not to conduct the ice business was greater than that in which he had actually previously done business is a circumstance which you have a right and should consider in determining the intent and purpose for which these restrictive contracts were obtained. Another and very important fact and circumstance which you should consider and weigh in determining the object and purpose for which these contracts were made is the very great number of such agreements obtained and businesses bought. I am unable to state to you the exact number of independent dealers whose ice routes were so bought, but they ran, if I mistake not, into the hundreds, and covered a very large portion of the territory of this city. As testified to by Mr. Clifford, the businesses and routes so acquired in what is called "District B," extending from Thirty-Fourth street to the Bronx, was at least, or over, 90 per cent. of the entire retail ice business, and not to exceed a dozen or so ice wagons in all that district were left in the hands of independent dealers. The extent and amount of the absorption

of independent business by the defendant becomes, therefore, a very important circumstance as bearing upon the question of its purpose and design in making these purchases, where, at the same time, the defendant exacted and took from the independent seller a covenant not to compete. What might be a very harmless transaction in the case of the purchase of a single route from a single individual takes on a very different character where the transactions are multiplied so as to practically cover the whole territory of the city. There is a potency in numbers which of itself may seriously interfere with the interests of the public.

And so, too, in determining the purpose and design of obtaining these restrictive contracts, the jury should carefully weigh and consider any other fact and circumstance in this case which tends to throw any light upon the question.

Among other things for your consideration are the declarations of the officers and agents of the defendant made in the discharge of their duties—whether verbal or contained in the letters written by the president of the company—declarations of the purposes and policy of the corporation and what it had or was seeking to accomplish. You are also to consider what was done in other ways and by other means. All these become very material in the solution of the purpose and intent with which the contracts referred to were made.

Not only should you consider and give proper weight to the declarations of its officers, but also to the acts of the defendant in the conduct of its business. It is a rule of law that, where the guilt of a party depends upon the intent, purpose, or design with which an act is done, collateral facts in which the party bore a principal part may be shown for the purpose of establishing a guilty intent, design, purpose, or knowledge. People v. Peckhens, 153 N. Y. 576, 47 N. E. 883.

It was within this rule that the court permitted the prosecution to show in this case the methods employed by the defendant in its efforts to destroy competition, and acquire the business of independent ice dealers. The prosecution was permitted to show that, under instructions from the president of the defendant, men were sent to follow the wagons of independent retail dealers, to list their customers, and then others were sent to solicit their trade, and take it from them by offering to sell ice to them at any price which would secure their patronage, and take it from the independent, and thus force the independent dealer to sell his business to the defendant or retire from it altogether. In other words, their testimony was received as tending to show that at the time many of these contracts with restrictive agreements against going into the ice business were obtained the defendant was also endeavoring in other ways to monopolize the field. So, too, the prosecution was permitted to show as tending to establish an attempt and design to create a monopoly and drive independent dealers out of business, or force them to sell to the defendant so it could handle and control the ice business, that defendant raised the price of ice at the ice bridges, so that the independent dealer could not pay the price asked and supply his regular customers without doing so at a

financial loss.  The prosecution claim this was done arbitrarily and without justification.  It is very manifest the small dealer could not continue in business under such conditions without sooner or later becoming bankrupt.  It is true, as has been argued by the able counsel for the defendant, that the defendant had the legal right to refuse to sell its ice to the independent competing ice dealer.  It had a right to ask such a price for its ice as it saw fit, it had the right to go into the district and undersell the independent dealer, but at the same time these acts were permitted to be shown as reflecting and tending to show a design and purpose in one way or the other to drive the independent dealer from the field of competition, so that ultimately this defendant would be the sole and only dealer selling ice in the districts in which the independent operated, thereby establishing a monopoly of the ice business in those districts, and thus enabling the defendant to control the price to be asked of the consumer.

This evidence became very important as throwing strong light upon the question as to whether in making the many contracts taken from independent dealers which contained the restriction that the seller should not enter the ice business for a given number of years those contracts were made "for the purpose of creating, establishing or maintaining a monopoly" as declared illegal by the statute.

It may be, and often is the case, that temporary low prices are given to the consuming public for the very purpose of crushing rivals in business to the end of ultimately controlling and raising prices to the permanent disadvantage of the public.  It is for you to say whether such was the object in this case.  The court cannot call the jury's attention to all the evidence bearing on this subject.  It can only reiterate the jury have the right, and it is their duty, to give due weight to every fact and circumstance which throws light upon the purpose with which these restrictive contracts were obtained.  If made "for the purpose of creating, establishing, or maintaining a monopoly," then the contracts violate the statute and are illegal.

And what I have said relative to the contracts with the independent retail route men also applies to certain other contracts introduced in evidence in this case.  For instance, the contract made with Willis A. Winne made April 26, 1905, whereby Winne sold or leased to the defendant certain icehouses, bridges, and business, and covenanted not to engage in selling ice at retail or wholesale in Greater New York, and like contracts with others not to increase the crop of ice to be harvested.

As to the effect of contracts made prior to the formation of the defendant, and their force and effect upon the question of the guilt of the defendant:

The jury will also remember that there are quite a large number of contracts and agreements of a like purport and tenor containing clauses and provisions against the seller of ice routes again engaging in the ice business, which were made prior to the incorporation of the defendant.  If the court recalls correctly, some of these contracts were made between independent ice dealers and the Consolidated Ice Company, and some with the Merchants' Union Ice Company and perhaps

others with other companies and concerns. That upon the organization of the American Ice Company the stock of the American Ice Company was exchanged for stock of the Consolidated Ice Company and for stock of other companies, so that the American Ice Company ultimately became the owner of all, or substantially all, of the stock of these other subordinate corporations. That later formal transfers of the properties of these companies were made to the American Company and with them were made assignments of the contracts so acquired by these other corporations, and the American Company thus acquired and succeeded to the rights of the others in these various contracts.

The defendant contends that it is not responsible in law for such contracts and agreements made prior to its organization and before itself had any legal corporate existence. In this contention the defendant is entirely right. I charge you, gentlemen of the jury, that the defendant is not, and cannot be, held criminally liable for the making of any such contract or agreement. Nevertheless that statement does not withdraw from your consideration the proper and legitimate bearing of such contracts and agreements in the disposition of the issues here involved. It is claimed by the prosecution that, although the defendant had no part in the making of such prior agreements, nevertheless that the defendant did acquire such contracts and agreements by assignment from others, and succeeded to such rights as they conferred, and that, in connection with other contracts and agreements made directly between the American Ice Company and other dealers whom it bought out, it utilized such prior agreements and contracts in connection with those obtained by itself to create, establish and maintain "an arrangement" within the meaning of the statute; that the defendant utilized these contracts made prior to its organization to effectuate and carry out its purpose and scheme of establishing and maintaining a monopoly in the ice business in this city or borough; that it thereby prevented competition and controlled prices. It was therefore not only for the purpose of showing (in part, at least) the degree and extent to which the defendant had in fact acquired control of the ice business in this city, but also for the purpose of permitting proof to be made of the use made and advantage taken of these prior contracts by the defendant in connection with other contracts made by itself that this court has received these prior contracts and agreements in evidence.

As we have previously stated, the defendant is not to be held civilly or criminally liable for the original making of such prior contracts, but if the defendant after their acquisition made use of them, in connection with other things, to establish and maintain an "arrangement" to create a monopoly and prevent competition, then the defendant does become legally liable for such an illegal and prohibited use, and cannot shield itself from responsibility for its own subsequent acts on the plea that the contracts were in fact made with some other company or corporation prior to its organization. It is the use made of these contracts in connection with other things, and not the original making of them, that carries with it the statutory condemnation. I accordingly charge you that you may take into consideration these prior contracts or agreements in aiding you in the determination of the question

whether or not the defendant made such an illegal arrangement whereby competition in the ice business in this city was or might have been prevented or restrained.

As to contracts made with other companies subsequent to the defendant's organization and assigned to it:

The same rule of law and responsibility applies equally to contracts made by other companies subsequent to the defendant's organization, and later acquired by the defendant.

If they were made and obtained by these subordinate companies which were in fact owned and controlled at the time by the defendant, and were in fact obtained at the instance and under the direction of the defendant and with its knowledge and for its use and benefit—in other words, if the subordinate company acted as the agent for the defendant in the transaction, and with its knowledge and direction—then, although made in the name of the subordinate company, the contracts so procured became and are to be deemed in law the acts and contracts of the defendant itself, and the same legal responsibility attaches to the transaction as though the contracts ran directly to and were made with the defendant.

You will recall the evidence touching these contracts to the effect that blank contracts were printed by the American Ice Company for the use of the subordinate companies, and in some cases such contracts when procured were on the same day, or the next day, assigned by the subordinate to the American.

What constitutes restraint of trade and competition:

We have already charged you that, if the contracts made by the defendant containing the restrictive clauses referred to were in fact obtained and made with the purpose and design of creating a monopoly, they are condemned by the statute and are illegal. I also charge you in this connection that they are contracts "whereby competition in this state in the supply or price" of ice was, or might have been, "restrained or prevented." These contracts by their very terms, and as matter of law, restrained and prevented or might have restrained competition in the ice business. That was the natural and legitimate legal effect of the agreement, and by the terms of the restrictive clause forbade the makers of such agreements entering into competition with the American Ice Company without the permission of that company. Such restrictive agreements are only permissible when innocently made without any purpose or intention of creating or maintaining a monopoly. If such contracts are tainted or made with such an illegal purpose and design, then they cease to be legal, and are illegal in law because they do or may prevent and restrain competition.

In this connection it becomes the duty of the court to enlarge somewhat upon the subject, and lay down some rules of law which govern such cases.

The jury will observe that the statute condemns contracts or arrangements whereby a monopoly may be created, established, or maintained, or whereby competition is or may be restrained or prevented.

You will at once perceive that the Legislature treats a monopoly and

restraint of competition as two distinct things—a monopoly usually, if not always, restrains competition, and usually is the result of a restraint of competition, but a restraint in competition may not extend to the degree of creating a monopoly.

To vitiate such contracts as the state act condemns, it need not be shown that the arrangement which the defendant made in fact resulted or might result in a total suppression of all competition, or might or would result in a complete and absolute monopoly of the ice business in the borough of Manhattan. All that is essential is that it restrains competition and tends to deprive the public of the advantages which flow from free competition. Northern Securities Co. v. U. S., 193 U. S. 332, 24 Sup. Ct. 436, 48 L. Ed. 679.

As was said by Mr. Justice McCall of this court:.

"The anti-monopoly act. is aimed at combinations between independent concerns for the purpose of regulating prices and production and what is abhorred and repugnant to the statute are contracts, agreements, arrangements, or combinations which tend toward a control of the sale and production of a thing of common use, and so prevent competition in supply and price."

· This statute was under consideration by the Court of Appeals in the case of Cummings v. Union Blue Stone Co., 164 N. Y. 404, 58 N. E. 526 (52 L. R. A. 262, 79 Am. St. Rep. 655), and the following language was used, viz.:

"The scope of the contract, and not the possible self-restraint of the parties to it, is the test of its validity."

Therefore, if you shall find as matter of fact that these contracts formed a part of an arrangement or scheme, and were made for the purpose of creating, establishing, or maintaining a monopoly, then the defendant is guilty of violating the statute, although it in fact did not afterwards raise prices. The guilt of the defendant does not depend on the question whether it in fact raised prices, or whether attempting to do so it failed in its efforts to maintain them, so long as the contracts in their scope and provisions are such that "competition in the price or supply" of ice was "or might be restrained or prevented."

You will also note that by the statute the "attempt" to do the thing prohibited is condemned as well as the doing of the thing, and one of the counts in this indictment charges the attempt "to make and enter into an arrangement whereby a monopoly in the production and sale in this state of an article and commodity of common use might be created, established and maintained."

I have already called your attention to an existing distinction between a monopoly and an agreement in restraint of trade and commerce, and we may now proceed to the consideration of what constitutes a monopoly.

What constitutes a monopoly:

The monopoly condemned by the statute need not be a complete and absolute one, excluding all competition—a complete control of the production and sale of a commodity. "A monopoly in the modern sense is created where, as the result of effort to that end, previously competing businesses are so concentrated in the hands of a sin-

gle person or corporation, or in a few persons or corporations acting together, that they have power to practically control prices of a commodity and thus suppress competition." "A monopoly exists where all or nearly all of an article of trade or commerce within a community or district is brought within the hands of one man or set of men, or of a corporation or set of corporations acting together so as to practically bring the handling or production of a commodity within such single control, to the exclusion of competition or free traffic therein."

Did the defendant effect, or attempt to make, such an arrangement? If so, it violated the statute in attempting to create and maintain a monopoly. Combinations and arrangements are unlawful, the design and effect of which necessarily is to give the party putting, or attempting to put, them into execution a monopoly more or less for any length of time of the production or sale of a commodity, or to regulate or control the price of a commodity to insure a pecuniary advantage in restraint of trade which would be injurious to the community. And right at this point we may with perfect propriety say and charge you that such a monopoly as we have defined, or the attempt to create one, need not cover the entire territory of the borough of Manhattan. If the monopoly sought to be established was one covering a part of the territory of the borough, of one district in the borough, so that the consumers in that portion of the city were deprived of the benefit of free competition, then the defendant would be just as guilty as though the monopoly extended to every foot of land within the boundaries of Manhattan.

Evidence has been given on the part of the defendant showing or tending to show that since 1900 the manufacture and consumption of artificial ice has been on the increase; that in the last few years artificial ice, as distinguished from natural ice, has become an important factor in the ice situation in this and other cities; that, owing to the ability of ice dealers to obtain a supply of manufactured ice from local plants, and also owing to the fact that certain producers and wholesale dealers have secured and established bridges for the handling of ice along the water-front, the possible supply of ice to those operating wagon routes has in the later years been greatly increased. It is argued from this on the part of the defendant that the ability of the defendant to establish or maintain a monopoly no longer exists or is possible, and that the defendant has not in fact maintained or enjoyed a monopoly of the business or been able to control prices to the jobber or individual consumer.

Be that as it may, the jury should not lose sight of the real issue in this case, and the one to be disposed of by your verdict.

The first count charges the doing of acts "pursuant to and in and toward and for consummation" of an arrangement to restrain and prevent competition in the sale of ice. The question for your determination in disposing of that count is, not whether the defendant is or was at the time of the finding of the indictment maintaining, or able to maintain, a monopoly in the ice business in this borough, or in a portion thereof, but whether the restrictive contracts referred to were at the time they were made, made for the purpose and design and with the intent and expectation, on the part of the defendant, of being able

to establish a monopoly in ice in this borough or some portion or district thereof. It is not a question of whether the defendant was able to carry out its plans, or realized its expectations, but whether at the time these contracts were made it was endeavoring to create and maintain a monopoly or restrain competition. If such was the purpose for which these restrictive contracts were obtained, they became and are illegal, and, as already charged, in law restrained and prevented competition. And if at any time subsequent to June 19, 1906, the defendant did any act in furtherance or in aid of the original unlawful arrangement to prevent competition, then it becomes your duty to convict under the first count of the indictment, notwithstanding later developments in the ice business may have rendered it impossible for the defendant then or now to maintain a monopoly. The restraint and prevention of competition condemned by the statute still exists in law.

The same proposition is true as to the third count of the indictment. That count charges an attempt to create a monopoly—not the creation of a monopoly, but the attempt to do so (which is equally condemned with the successful accomplishment of creating a monopoly)—and the doing of acts for the consummation and in furtherance thereof. If the defendant attempted to create a monopoly by these various restrictive contracts and other measures, and within two years subsequent to June 19, 1906, that any act in furtherance thereof, or in, toward, or for the consummation of such attempted illegal arrangement, then it becomes your duty to convict upon the third count, even though the defendant utterly failed of its purpose and the creation of a monopoly became practically impossible.

To return again to the matter of these numerous restrictive contracts whereby ice dealers agreed with the defendant not to engage in the ice business in this borough for 10 years. They restricted the prosecution of a lawful business or occupation and restrained competition, and, if made for the purpose and design of creating or maintaining a monopoly, constitute a plain violation of the statute. If, therefore, the defendant kept these contracts in life and force and attempted to reap benefits therefrom, or did any act toward that end, then the defendant was doing an act "pursuant to and in and toward and for the consummation of an arrangement" to prevent and restrain competition within the meaning of the statute, and it is no answer or defense to say that the defendant did not, in fact, maintain or was unable to maintain a monopoly in ice.

As to statute of limitations:

The anti-monopoly act under which this indictment is found declares a corporation or individual violating any provision of the act to be guilty of a misdemeanor.

The statute of limitations in reference to misdemeanors in substance provides that an indictment for a misdemeanor must be found and returned within two years from the time of the commission of the offense constituting the crime, or the prosecution therefor is barred, and no conviction for the same can be had. Therefore the defendant in this case cannot be convicted, even though guilty, if the offense was not committed within two years prior to the finding of the indictment

which was returned by the grand jury on the 19th day of June, 1908. Consequently the defendant cannot in any court be found guilty by your verdict for any offense committed prior to the 19th day of June, 1906.

The defendant contends that the statute of limitations is a complete bar to this prosecution because most, if not all, of the acts complained of were done prior to the 19th of June, 1906—more than two years prior to the finding of the indictment.

This brings the court and the jury to the serious consideration of the contention of the parties—both as to the law and the facts of the case.

If the illegal arrangement charged in this case was made and entered into more than two years prior to June 19, 1908, and the matter ended there without the commission of further acts by the defendant to effectuate that arrangement, it is your duty to acquit the defendant by your verdict on this trial.

The anti-monopoly act, however, not only makes it unlawful to make or attempt to make or enter into any such contract, arrangement, or combination, but equally unlawful to "do any act pursuant thereto, or in, toward or for the consummation thereof."

The statute condemns the doing of anything in pursuance of the original unlawful arrangement. In substance and effect the statute prohibits the keeping alive or perpetuation of the original unlawful combination or arrangement or the taking advantage of any such prohibited arrangement, combination, or contract. In the language of the statute, it forbids the doing of "any act pursuant thereto or for the consummation thereof."

If you should, therefore, find that the defendant is guilty of creating an unlawful arrangement for the purpose of creating a monopoly in the production or sale of ice, or whereby competition in the supply or price of ice was or might have been restrained or prevented, and this original arrangement was made and established prior to June 19th, 1906, nevertheless if, after the making of such an illegal arrangement, the defendant subsequent to June 19, 1906, did acts "pursuant thereto, or in, toward or for the consummation thereof," then it is guilty of the offense charged, and the statute of limitations constitutes no bar to its conviction.

Such a conviction would not be for the making of the original unlawful arrangement, but for doing acts "pursuant thereto, or in, toward or for the consummation thereof." In effect, the statute condemns not alone the making of such an illegal arrangement, but also the continued existence and prosecution of the unlawful arrangement. It is quite as harmful to public interests to maintain in existence such an illegal arrangement as to conceive it in the first instance and put it into operation. And the statute wisely makes the party who perpetuates such an arrangement by doing acts in furtherance thereof just as much a violator of the law as by creating the illegal arrangement in the first instance.

In substance, the statute makes it a continuing offense against the law of the land—and conscious participation and continued act or acts in furtherance of the original illegal arrangement makes the defendant

guilty, and the statute of limitations raises no bar to a conviction for acts done within the period of two years from the finding of the indictment.

In this connection the court calls the attention of the jury to the first count in the indictment in this case. It charges the defendant with the "doing of an act pursuant to and in and toward and for the consummation of an arrangement whereby competition in this state in the supply and price of an article of common use was and might have been restrained and prevented, committed as follows." Then follows the specification of the manner and mode by which the illegal arrangement is claimed to have been created and the acts done. And the first count of the indictment closes with this declaration:

"That each and every act, fact, matter, and thing hereinbefore set forth, occurring, transpiring, and existing, and in this indictment stated to occur, transpire, and exist on and after the 1st day of June, 1906, was an act, fact, matter, and thing done by the said corporation pursuant to the arrangement last aforesaid, and in, toward, and for the consummation thereof against the form of the statute in such case made and provided," etc.

I also call your attention to the fact that most of the bills of sale containing restrictive clauses against the seller again entering into business provided he should not do so for the term of ten years from the date of the sale of his business without the consent of the ice company. In other words, by the very terms of the contracts, the American Ice Company were projecting their operations into the future for a term of 10 years. The allegations of the indictment are that "all of which said agreements, covenants and arrangements are now in full force and effect."

That is at the time of the finding of the indictment. So far as I am aware, there is no evidence that the American Ice Company abandoned or canceled these agreements or released those making them from the provisions against re-entering the business. The company made payments in some cases where payments were called for by the terms of the agreements. They obtained injunctions in other cases, and in one case at least the injunction stands in full force and effect. They occupy and enjoy property leased or bought which contained restrictive claims.

If you should find the defendant entered into or created an illegal arrangement, and that within the two years prior to the finding of the indictment did acts keeping the same in existence, then it becomes your duty to find it guilty as charged in the first count in the indictment.

Reasonable doubt:

The presumption of innocence continues with the defendant throughout the entire trial, until the jury is satisfied beyond a reasonable doubt of its guilt, and unless, upon a consideration of all the evidence in the case, you are convinced of its guilt beyond a reasonable doubt, and likewise that the defendant committed the offense charged within the period of two years before the 19th day of June, 1906, it will be your duty to return a verdict of not guilty.

Upon a careful consideration of the evidence and the questions of law involved, the court withdraws from your consideration the second

count of the indictment charging the defendant with making the arrangement at the time of the incorporation of the defendant, for the reason that, if an illegal arrangement was made by the defendant, it was made and created by the defendant subsequent to its incorporation in the manner specified and set forth by the first count. Therefore the court leaves it for you to say by your verdict under the instructions given whether the defendant is guilty under the first count "for doing an act pursuant to, and in and toward, and for the consummation of an arrangement whereby competition" in the product and sale of ice "was or might have been restrained or prevented" as charged in the first count.

Also whether the defendant is guilty of an attempt to create a monopoly, and of doing acts for the consummation thereof, as charged in the third count of the indictment.

By your verdict you may find the defendant guilty on either or on both said counts as you find the evidence warrants.

If you find the defendant guilty, your verdict will be that of guilty as charged in the first count, or as charged in the third count, or guilty as charged in the first and third counts.

If you find the defendant not guilty, then your verdict will be a general verdict of not guilty.