JOHN MARSICH, Respondent, *v.* EASTMAN KODAK COMPANY and Others, Appellants.

Second Department, April 18, 1935.

*E. Willoughby Middleton,* for the appellants.

*David T. Smith* [ *Nicholas A. Heymsfeld* with him on the brief], for the respondent.

PER CURIAM. This action is by a photographic supplies dealer against a producer of photographic supplies and several dealers therein for damages as a consequence of their adherence to an agreement maintaining a price scale in respect of a single producer's products and claimed to be in violation of law and particularly in violation of section 340 of the General Business Law.

The allegations in paragraph fourteenth of the amended complaint are mere conclusions of law. The complaint is insufficient unless the other allegations of fact, to which the fourteenth paragraph has reference, establish a violation of section 340 of the General Business Law, known as the Donnelly Anti-Trust Act. This view evolves the controlling question of substance, as to whether or not the contract pleaded violates the State statute.

A contract involving intrastate transactions, made by a single producer with a group of dealers for the maintenance of a price scale on its products and for the enforcement thereof by prohibiting dealers from selling to one who violates the price scale or who in turn sells to one who violates the price scale, does not conflict with the statute, is not illegal, and, therefore, affords no basis for a claim of damages by one claiming to be aggrieved thereby. (*Walsh* v. *Dwight*, 40 App. Div. 513 [1st Dept. 1899]; *Locker* v. *American Tobacco Co.*, 121 App. Div. 443 [2d Dept. 1907]; affd., 195 N. Y. 565 [1909]; *Park & Sons Co.* v. *Nat. Druggists' Assn.*, 54 App. Div. 223 [1st Dept. 1900]; affd., 175 N. Y. 1 [1903].) The case of *Straus* v. *American Publishers' Assn.* (85 App. Div. 446; affd., 177 N. Y. 473) is not to the contrary. An agreement was there involved between several producers or publishers and groups of dealers under which a price scale of the products of the several publishers was sought to be maintained. That is not this case. The scope of a State statute, especially in respect of intrastate matters, is to be determined by the State courts. The soundness of the economic theories embodied in such a statute is a legislative question, and courts may not obtrude their economic theories into a statute under the guise of interpreting it. What constitutes the common law of this State, in the light of which State statutes are to be interpreted, is to be determined by State court decisions.

The construction by State courts of a State statute is binding on the Federal courts, there being no Federal question involved, even though such courts disagree with the soundness of the interpretation. (*Covington* v. *Kentucky*, 173 U. S. 231; *M'Keen* v. *Delancy's Lessee*, 9 id. [5 Cranch] 22; *Elmendorf* v. *Taylor*, 23 U. S. [10 Wheat.] 152; Black, Interpretation of Laws [2d ed.], p. 620.)

A Federal decision contrary in principle is not binding upon a State court in respect of a State statute or of a domestic doctrine not involving a Federal question. (*People ex rel. Central Park, etc., R. R. Co.* v. *Willcox*, 194 N. Y. 383, 386, per CULLEN, Ch. J.; *Johnston* v. *Compagnie Generale Transatlantique*, 242 id. 381, 386, per POUND, J.; *People ex rel. Rice* v. *Graves*, 242 App. Div. 128.)

In considering the matter here involved, as was said in a similar situation, " We may eliminate the Federal Anti-Trust laws " (*Barns*

v. *Dairymen's League Co-operative Assn., Inc.*, 220 App. Div. 624, 635), and, as a consequence, the decisions thereunder. The enforcement of rights under such Federal statutes may be had in the Federal courts only. (*Barns* v. *Dairymen's League Co-operative Assn., Inc., supra*, p. 635; *Eastman Kodak Co.* v. *Powers Film Products, Inc.*, 189 App. Div. 556, 560.)

Federal cases interpreting Federal statutes, or relating to interstate situations, are not controlling when there are State decisions relating to the State statute invoked which may, in some respects, place upon a State statute an interpretation different from that placed by the Federal courts upon a different though somewhat similar Federal statute.

If the Legislature deemed that the foregoing State decisions gave to the statute a meaning or scope different from that intended, it would have amended the statute so as to give it the effect intended if such different effect were similar in character to that given by the Federal decisions to the Federal Anti-Trust statute. In the face of these decisions the Legislature deliberately refrained from making any such amendment or change in the statute. The State decisions are controlling and the Federal decisions are not pertinent. " There should be submission to authority " which is controlling. (*Hayes* v. *Hayes*, 150 App. Div. 842, 844; affd., 208 N. Y. 600.)

The order denying the motion to dismiss the complaint as being insufficient in law should be reversed on the law, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CARSWELL, SCUDDER and TOMPKINS, JJ., concur; DAVIS, J., with whom HAGARTY, J., concurs, reads for affirmance.

DAVIS, J. (dissenting). The complaint states a cause of action. (*Gerseta Corporation* v. *Silk Assn. of America*, 220 App. Div. 302; *Brown* v. *Metropolitan News Co., Inc.*, 149 Misc. 536.) It is alleged, in brief, that defendant Eastman Kodak Company has by various means obtained a practical monopoly of the manufacture and sale of photographic supplies in this State and in the United States; that it has made agreements with dealers so that it has fixed the prices at which these commodities are sold to dealers, retailers and consumers, with the penalty that if any one sells at less than the price fixed by it, he will not be able to purchase supplies from any dealer; that one of plaintiff's customers sold at less than the price fixed by the Kodak Company; and when plaintiff continued to sell to the offending retailer, the combination of the defendant and the delears, by a conspiracy and agreement, refused to sell any more goods to him. It is alleged that this combination and the agreement in respect to fixing prices are illegal, and that

plaintiff has suffered damages in being thus restricted in his right to pursue a lawful business and deprived of his right to deal in these products.

Where an unlawful combination results in special injury to any person, it is a tort for which damages may be recovered. (*Rourke* v. *Elk Drug Co.*, 75 App. Div. 145; *Gerseta Corporation* v. *Silk Assn. of America, supra; Eastman Kodak Co.* v. *Southern Photo Material Co.*, 295 Fed. 98; affd., 273 U. S. 359.)

At common law combinations or monopolies to control the price of prime necessities were unlawful. It was to extend the scope of that fundamental doctrine that statutes were adopted by Congress and by State Legislatures. At the outset, we may say that they were chiefly aimed at combinations of manufacturers called " trusts." (*Cummings* v. *Union Blue Stone Co.*, 164 N. Y. 401; *Cohen* v. *Berlin & Jones Envelope Co.*, 166 id. 292.) But there was a well-defined purpose to prevent restraint of free competition and trade by price-fixing or other devices. (*Nash* v. *United States*, 229 U. S. 373; *United States* v. *Eastman Kodak Co.*, 226 Fed. 62.) The underlying principle was the same in all statutes.

There is here no combination of manufacturers, but rather a combination of a manufacturer with dealers and retailers to fix absolutely the price at which commodities may be sold. The statute (General Business Law, § 340) provides that every contract, arrangement or combination which creates or maintains a monopoly in the manufacture, marketing or sale of an article or product used in the conduct of trade and commerce, or of any article in common use, or prevents and restrains " competition or the free exercise of any activity in this state in  *  *  *  marketing or sale in this state or in the supply or price of any such article, product, commodity," or for the purpose of creating a monopoly or " unlawfully *interfering with the free exercise of any activity* within this state in the  *  *  *  marketing or sale of any such article, product, commodity," or " the free pursuit in this state of any lawful business, trade or occupation," is against public policy, illegal and void.

There are two main inhibitions in this statute: *one*, the creation of a monopoly; *two*, acts which interfere with the sale and marketing of products or the free exercise of any activity in those respects, through control of the price or supply of products. It is with the latter that we are here concerned.

It seems obvious that the agreement and combination of the Kodak Company and its dealers in thus fixing ultimate prices at which merchantable products may be sold and affixing penalties for selling at prices less than those fixed, constitute a restraint on the free right of competitive marketing and compel the customer to pay the price fixed by the manufacturer.

The practice of fixing prices by a manufacturer at which dealers and retailers must sell became quite common a few years ago. Very likely for the reason that most business is interstate and that the policies here pursued have been declared illegal in Federal courts and thereby such acts have largely been abandoned, there is no authority on the precise question in our State courts. The courts here have dealt chiefly with questions involving a combination of manufacturers. The principle was recognized in the dissenting opinion of CULLEN, J., in *Park & Sons Co.* v. *Nat. Druggists' Assn.* (175 N. Y. 1, 45). The nearest approach to a discussion of principle is to be found in *Straus* v. *American Publishers' Assn.* (85 App. Div. 446; affd., 177 N. Y. 473; S. C., 127 App. Div. 935; 193 N. Y. 496; 199 id. 548; revd., 231 U. S. 222). There are cases in lower courts which have dealt with some phases of restraint of trade not involving price-fixing. (See *People* v. *American Ice Co.*, 120 N. Y. Supp. 443; *Langley* v. *Furman*, 132 Misc. 726.)

We may, then, look to authorities in other jurisdictions in similar cases, not because they are controlling on the courts of this State, but to ascertain the fundamental principles of similar statutes and to study the reasoning of the opinions as a guide to our own decision.

There is a unanimity in the decisions of the highest court of our land as to the invalidity of agreements made by one manufacturer with dealers and retailers, the object of which is to fix prices from the manufacturer to the consumer, with penalties imposed for selling at less than the fixed price. Such agreements or combinations constitute a restraint of trade and of free competition. Of the many cases that might be cited, we content ourselves with only a few, with no discussion of the facts or the principles stated. (*Dr. Miles Medical Co.* v. *Park & Sons Co.*, 220 U. S. 373; *Bauer & Cie* v. *O'Donnell*, 229 id. 1.) Devious means of avoiding the inhibition against price-fixing have met with similar condemnation. (*Straus* v. *Victor Talking Machine Co.*, 243 U. S. 490; *Boston Store* v. *American Graphophone Co.*, 246 id. 8.)

We of the minority deem the contract a violation of the statute and in defiance of its plain provisions. We think one of the purposes of the statute was to prevent the restraint of marketing and sale of products such as we find here; and that the order should be affirmed.

HAGARTY, J., concurs.

Order denying motion to dismiss complaint as insufficient in law reversed on the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.