Bellacosa, J.
(dissenting). I vote to affirm. The investigatory and enforcement powers of the Attorney-General under the Donnelly Act should not be expanded by judicial construction to include vertical restraints, as that is a policy choice and authorization uniquely reserved to the legislative branch (compare, Boreali v Axelrod, 71 NY2d 1).
The Donnelly Act (General Business Law § 340 et seq.) does not expressly declare illegal or prohibit vertical restraint agreements establishing exclusive territorial distributorships between noncompetitors in different positions in the distribu *336 tion chain, nor does it vest authority in the Attorney-General to investigate and prosecute such commercial arrangements. The courts of this State have never, up to now, found such a prohibition or power even by implication in the provisions of the act. Indeed, the opposite has prevailed over many years. Moreover, the Legislature has evidenced its acquiescence in these decisions by repeatedly refusing to adopt legislation sought by the Attorney-General restricting vertical restraints and granting that office such enforcement powers. Most pertinently, the Legislature has even specifically refused to adopt legislation prohibiting vertical distribution agreements between brewers and beer wholesalers.
The determination of the issue as to whether the Attorney-General has the authority to issue the subpoenas and interrogatories which respondents seek to quash necessarily hinges upon whether vertical restraint agreements creating exclusive territorial distributorships are prohibited or illegal under the Donnelly Act, not whether the legality of such arrangements is "arguable”, as suggested by the majority. Such a tenuous predicate for the issuance of formal, duplicative and burdensome investigatory process by the chief law enforcement officer of the State should not be countenanced by this court.
General Business Law § 340, "[t]he determinative provision of the Donnelly Act” (State of New York v Mobil Oil Corp., 38 NY2d 460, 462), provides that "[ejvery contract, agreement, arrangement or combination whereby * * * [a] monopoly * * * is or may be established or maintained, or whereby [cjompetition * * * is or may be restrained * * * is hereby declared to be against public policy, illegal, and void”. The act authorizes the Attorney-General to bring actions "to restrain and prevent the doing in this state of any act herein declared to be illegal” or prohibited (General Business Law § 342). In the performance of these enforcement responsibilities, the Attorney-General is empowered to investigate any person or business enterprise who is or is about to be engaged in any act "by this article prohibited or declared to be illegal”; who "assisted or participated” in any such act; or "whenever he believes it to be in the public interest that an investigation be made” (General Business Law § 343). The investigation provisions of section 343 do not create new categories of illegal or prohibited acts, but merely provide when and how an investigation should be effectuated.
In Marsich v Eastman Kodak Co. (244 App Div 295, affd 269 *337 NY 621), this court affirmed a decision upholding the right of a producer and its dealers to refuse to sell their product to one who violated a price scale established by the producer. The court distinguished that situation from one where the agreement was between several manufacturers or producers which would be covered under General Business Law § 340. It stated that "[t]he soundness of the economic theories embodied in such a statute is a legislative question, and the courts may not obtrude their economic theories into a statute under the guise of interpreting it” (id., at 296 [emphasis supplied]). Similarly, in Stemmerman v Kelly (150 App Div 735, affd 220 NY 756), we affirmed a decision upholding a vertical restraint agreement establishing a sole source distributorship within an exclusive territory. The court there noted that "there may lawfully be a partial restraint of trade, sufficient to protect the interests of a party and not so great as to interfere with the interests of the public” (id., at 738; see also, Alexander’s Dept. Stores v Ohrbach’s, Inc., 266 App Div 535, appeal dismissed 291 NY 707).
The most direct and recent pronouncement on the legal propriety under State law of vertical restraint agreements concerning exclusive territorial distributorships arose in Dawn to Dusk v Brunckhorst Co. (23 AD2d 780). The manufacturer’s exclusive distributor and the exclusive subdistributor within a designated area refused to sell to the plaintiff because the latter refused to deal solely through the subdistributor. Relying upon General Business Law § 340, the court noted that "[n]ot every agreement or combination which is in restraint of trade is proscribed by the statute” (id., at 781), and specifically held "[a]n agreement or arrangement among parties in a vertical relationship, which restricts the territory within which the buyer, here the defendant jobber Vaccaro, may resell the goods in question does not violate section 340 of the General Business Law” (id., at 781 [citations omitted]).
Against the backdrop and long history of the statute and cases interpreting it, the court now discerns an implied power for the Attorney-General to investigate and litigate against vertical restraints. Recently, we rejected just such an analysis seeking to create by implication a private action under the Martin Act (see, CPC Intl. v McKesson Corp., 70 NY2d 268, 276-277). In direct contradiction of our past opinions on the Donnelly Act that a "ruling of a Federal court interpreting a Federal statute has no direct bearing upon a State court’s analysis of an analogous provision enacted by the State Legis *338 lature” (People v Roth, 52 NY2d 440, 447; see also, State of New York v Mobil Oil Corp., 38 NY2d 460, 463, supra; and Marsich v Eastman Kodak Co., 244 App Div 295, affd 269 NY 621, supra), the majority relies upon Federal court precedents interpreting the Sherman Antitrust Act and borrows their "rule of reason” analysis from that quite different and explicit statute. Surely, had the New York State Legislature deemed that our State court "decisions gave to the statute [Donnelly Act] a meaning or scope different from that [originally] intended, it would have amended the statute as to give it the effect intended”, especially since it was specifically importuned to do so (Marsich v Eastman Kodak Co., 244 App Div 295, 297, affd 269 NY 621, supra). In fact, the Attorney-General has made the effort to align the requirements of the Donnelly Act with those of the Sherman Antitrust Act and "has sought to obtain procedural tools comparable to those available under federal law” because of "the absence of a state per se rule and * * * vertical restraints” (Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 340, 1988 Cum Ann Pocket Part, at 187). He is even in this very matter litigating the same subject under Federal law in the Federal courts.
At least seven recent bills would, in varying degrees, have restructured the Donnelly Act (see, Bill No. S. 8399 [introduced 1986]; Bill No. A. 5835 [introduced 1985]; Bill No. A. 1876 [introduced 1985]; Bill No. S. 420 [introduced 1985]; Bill No. A. 6055 [introduced 1984]; Bill No. S. 5121 [introduced 1984]; and Bill No. S. 1591 [introduced 1984]). New and modified provisions directly relevant to this case would have mandated that State courts "give due consideration and great weight” to the Federal courts’ interpretations of Federal antitrust statutes specifically including the Sherman and Clayton Antitrust Acts, and "to the per se doctrine to restraints of trade” (see, e.g., Bill No. S. 8399 [introduced 1986]). Other changes would have provided the Attorney-General greater investigatory and enforcement powers and would have made it a specific violation to allocate customers or markets functionally or geographically. Five bills directly and particularly regulating vertical restraints in the malt beverage industry, explicitly declaring such agreements unlawful and empowering the Attorney-General to investigate and litigate such restraints, were rejected (Bill No. A. 5754 [introduced 1985]; Bill No. A. 4077 [introduced 1985]; Bill No. S. 2325 [introduced *339 1985]; Bill No. A. 4284 [introduced 1983]; Bill No. S. 2668 [introduced 1983]).
All extant judicial construction of General Business Law § 340 refused to prohibit vertical restraint agreements; yet, the Legislature on no less than 12 occasions refused to change that and rejected bills to give the Attorney-General the very power now conferred.
In Matter of Knight-Ridder Broadcasting v Greenberg (70 NY2d 151), this court used the unanimity of precedents in all four Appellate Divisions construing the Shield Law statute (Civil Rights Law § 79-h) as protecting only confidential news sources, coupled with subsequent failed legislative efforts to amend the statute to broaden the privilege, as "compellingly persuasive evidence” (id., at 159) that the Legislature did not intend that such a broad privilege should exist. The court said that legislative history must be "reviewed in light of the existing decisional law which the Legislature is presumed to be familiar with and to the extent it left it unchanged, that it accepted” that decisional law (id., at 157, citing Arbegast v Board of Educ., 65 NY2d 161, 169; Hammelburger v Foursome Inn Corp., 54 NY2d 580, 588; Engle v Talarico, 33 NY2d 237, 242). Building on this reasoning, in Boreali v Axelrod (71 NY2d 1, supra) the court relied, in part, upon negative legislative history, resulting from some 40 failed efforts to expand the prohibitions against smoking in public places (see, Public Health Law art 13-E), as evidence that the New York Public' Health Council had exceeded the scope of its broad authority to protect the public health by promulgating regulations limiting smoking in certain public places.
If the executive branch, under the separation doctrine, must respect the legislative branch prerogatives and history in a particular area, so must the judicial branch. Conflicting and selective applications of recently announced principles by this court do not well serve the judicial process and its purposes. I would affirm and quash the subpoenas.
Judges Simons, Alexander, Titone and Hancock, Jr., concur with Chief Judge Wachtler; Judge Bellacosa dissents and votes to affirm in a separate opinion; Judge Kaye taking no part.
Order reversed, with costs, and the judgments of Supreme Court, New York County, reinstated. Certified question not answered as unnecessary.